CHARLES RUSH *vs.* DANIEL L. BUCKLEY, et al.

SAME *vs.* HERBERT W. FAIRFIELD, et al.

Kennebec. Opinion June 19, 1905.

*Augusta Municipal. Court. False Imprisonment. Immunity of Judges, Magistrates, Officers and Complainants in Criminal Proceedings. Jurisdiction of Judges and Magistrates in Criminal Proceedings. When Judges, Officers and Complainants will be Protected.—City Ordinances. Pleading. Practice. Waiver. R. S. 1903, c. 4, § 93, Par. IX.*

The plaintiff had been arrested upon two occasions, brought before the Augusta Municipal Court, tried, convicted, sentenced to pay a fine in each case and committed to jail in default of such payment, upon warrants. issued by that court. The offense alleged in the complaint and warrant in each case was the violation of an ordinance of the city of Augusta regulating public carriages therein, and prohibiting all persons from driving such a carriage in the city of Augusta without a license therefor, under a penalty therein provided. In these two cases, reported and argued together, the plaintiff sues the judge of the municipal court who issued the warrants, the officer who served them and the persons who made the two complaints, for false imprisonment, upon the ground that the ordinance had never gone into effect, and was void, because it had never been published in some newspaper printed in Augusta, as required by the statute authorizing such ordinances. Assuming that the ordinance never became effective because of this failure to publish it, the question presented by the two cases is, whether the judge who issued the warrants, the officer who served them, and the persons who made the complaints upon which they were issued, or either of them, are liable in damages to the plaintiff for this alleged false imprisonment.

As to the liability of the defendants who made the original complaints upon which the warrants were issued : Where a person does no more than to prefer a complaint to a magistrate, in a matter over which the latter has a general jurisdiction, he is not liable in trespass for false imprisonment for the acts done under the warrant which the magistrate thereupon issues, even though the magistrate has no jurisdiction over the particular complaint. In order for a complainant to be liable in this form of action, whether his motives were malicious or not, he must do something more than merely to make such a complaint before a magistrate having jurisdiction of the party and over the general subject matter, by interfering and instigating the officer to enforce the warrant. If he takes upon himself

to direct or aid in the service of a bad warrant, or interposes and sets the officer to do execution, he must take care to find a record that will support the process, or he cannot set up and maintain his justification.

In these cases, neither of these complainants aided or in any way participated in the arrest of the plaintiff upon the warrants or in his commitment to jail. They took no part in the plaintiff's arrest or commitment, nor did they officiously interfere therewith by giving directions to the officer, or otherwise. They are consequently not liable in damages to the plaintiff in these actions.

As to the liability of the officer : For reasons founded on public policy, and in order to secure a prompt and effective service of legal process, the law protects its officers in the performance of their duties, if there is no defect or want of jurisdiction apparent on the face of the writ or warrant under which they act. The officer is not bound to look beyond his warrant. He is not to exercise his judgment touching the validity of the process in point of law; but if it is in due form, and is issued by a court or magistrate apparently having jurisdiction of the case or subject matter, he is to obey its commands. In such case he may justify under it, although in fact it may have been issued without authority, and therefore be wholly void.

The ministerial officer is bound to know the jurisdiction of the court which issues process to him, he is bound to know whether, from constitutional or other reasons, the court has jurisdiction over offenses of that nature, but he is not bound to inquire into the question of fact as to whether or not a city ordinance in relation to a subject matter, concerning which the city is by statute authorized to pass ordinances, has been published as required by the statute.

The warrants in these cases were issued by the judge of the municipal court of the city of Augusta, which court had general jurisdiction over the subject matter of the violation of city ordinances, by which we mean, the power to hear and determine cases of the general class to which the proceedings in question belongs. The city had power to pass such an ordinance as the one in question by express authority of the statute. This ordinance was duly passed by the city government and only claimed to be invalid or ineffective because it was never published in a newspaper as required by the statute. The warrants contained nothing upon their face to indicate that the court which issued them, and which had general jurisdiction over the subject matter, did not have jurisdiction over the particular offense alleged, or that the facts stated in the complaints did not constitute an offense because of this failure to comply with the preliminary requisite as to publication. Under these circumstances, the officer is not liable in damages in these actions.

As to the liability of the judge who issued the warrants, and before whom the plaintiff was tried and convicted : It is a well established rule that judges of courts of superior jurisdiction are not liable to civil actions for their judicial acts, even where such acts are in excess of their jurisdiction.

Whether this immunity from civil liability is equally applicable to a judge of an inferior court, or to a magistrate of limited jurisdiction, is a question about which the authorities are not in entire accord. This court favors the doctrine, towards which there is a strong tendency in more recent judicial opinions, that where a judge of an inferior court, or a magistrate, is invested by law with jurisdiction over the general subject matter of an alleged offense, that is, has the power to hear and determine cases of the general class to which the proceeding in question belongs, and decides, although erroneously, that he has jurisdiction over the particular offense of which complaint is made to him, or that the facts charged in the complaint constitute an offense, and acts accordingly, in entire good faith, such erroneous decision is a judicial one for which he should not be, and is not liable in damages to a party who has been thereby injured. In accordance with this doctrine, and under the facts already stated, this defendant, the judge, is not liable in damages to the plaintiff.

Where a case comes to the Law Court upon a report of the evidence, the necessity for a compliance with the rules of pleading must be considered as waived and the Law Court will consider the questions presented by the report.

EMERY, J., DISSENTING.

On report. Judgment for defendants.

Two actions for false imprisonment heard together. Each writ dated Jan. 15, 1904. Plea, in each case, the general issue. After all the evidence had been taken out in the court of the first instance, it was agreed that the same should be reported to the Law Court, and that "upon so much thereof as is legally admissible the Court to render such judgment in each case as the law and evidence require."

The defendants are *Daniel C. Buckley, Herbert W. Fairfield, Albert G. Andrews,* Judge of the Municipal Court of the City of Augusta, and *Henry N. Breen,* City Marshal of said City.

Said defendants, Buckley and Fairfield, had each made a complaint against the plaintiff for violation of an ordinance of the City of Augusta regulating public carriages therein, and which prohibits all persons from driving such a carriage in said city without a license therefor, under a penalty therein provided. On these complaints, warrants for the arrest of the plaintiff were duly issued by said Judge, and the plaintiff was arrested on said warrants by said City Marshal and brought before said Judge for trial, who found the plaintiff guilty as charged in said complaints and fined the plaintiff

ten dollars in each case. A mittimus was issued in each case and by virtue thereof the plaintiff was committed to jail where he remained for four hours and was then released on bail. The plaintiff then brought these two actions for false imprisonment upon the ground that the aforesaid ordinance had never gone into effect and was void, because it had never been published in some newspaper printed in Augusta as required by Revised Statutes, chapter 4, section 93, paragraph IX.

All the material facts are fully stated in the opinion.

*Williamson & Burleigh,* for plaintiff.

*E. M. Thompson,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ., EMERY, J., Dissenting.

WISWELL, C. J. The plaintiff had been arrested upon two occasions, brought before the Augusta Municipal Court, tried, convicted, sentenced to pay a fine in each case and committed to jail in default of such payment, upon warrants issued by that court. The offense alleged in the complaint and warrant in each case was the violation of an ordinance of the City of Augusta regulating public carriages therein, and which prohibited all persons from driving such a carriage in the City of Augusta without a license therefor, under a penalty therein provided. In these two cases, reported and argued together, the plaintiff sues the judge of the municipal court who issued the warrants, the officer who served them and the persons who made the two complaints, for false imprisonment, upon the ground that the ordinance had never gone into effect, and was void, because it never had been published in some newspaper printed in Augusta as required by the statute authorizing such ordinances. R. S., c. 4, sec. 93, paragraph IX.

Assuming that the ordinance never became effective because of this failure to publish it, the question presented by the two cases is, whether the judge who issued the warrants, the officer who served them, and the persons who made the complaints upon which they were issued, or either of them, are liable in damages to the

plaintiff for this alleged false imprisonment. The plaintiff makes the preliminary point that it is not open to the defendants to justify under these proceedings, since no such justification was set up in the pleadings, but where a case comes to the law court, as did this, upon a report of the evidence, the necessity for a compliance with the rules of pleading must be considered as waived, and we will therefore proceed to consider the questions presented by the report.

As to the liability of the defendants who made the original complaints upon which the warrants were issued: It is settled by an almost unbroken line of authorities, that where a person does no more than to prefer a complaint to a magistrate, in a matter over which the latter has a general jurisdiction, he is not liable in trespass for false imprisonment for the acts done under the warrant which the magistrate thereupon issues, even though the magistrate has no jurisdiction over the particular complaint. *Barker* v. *Stetson*, 7 Gray, 53; *Langford* v. *Boston & Albany R. R. Co.*, 144 Mass. 431; *Gifford* v. *Wiggins*, 50 Minn. 401, 52 N. W. 904; *Murphy* v. *Walters*, 34 Mich. 180; *Teal* v. *Fissel*, 28 Fed. R. 351. If the complaint is malicious, and without probable cause, the complainant would be answerable in another form of action, and it would be no defense that the facts stated to the magistrate, upon which the warrant was issued, did not constitute a criminal offense. *Finn* v. *Frink*, 84 Maine, 261. In order for a complainant to be liable in this form of action, whether his motives were malicious or not, he must do something more than merely to make complaint before a magistrate having jurisdiction of the party and over the general subject matter, by interfering and instigating the officer to enforce the warrant. "The rule is, that if a stranger voluntarily takes upon himself to direct or aid in the service of a bad warrant, or interposes and sets the officer to do execution, he must take care to find a record that will support the process, or he cannot set up and maintain his justification." *Emery* v. *Hapgood*, 7 Gray, 55.

There is no evidence in this case sufficient to take it out of the general rule as to the liability of the complainants. Neither of these complainants aided or in any way participated in the arrest of the plaintiff upon the warrants or in his commitment to jail after the

hearing in default of the payment of the fine imposed. They did not in any way take part in the plaintiff's arrest or commitment, nor did they officiously interfere therewith by giving directions to the officer, or otherwise. It is true, that one of the complainants, when asked by the judge, after the imposition of the fine, as to whether or not he wanted the sentence enforced, replied in the affirmative, but this was no such interference with the service of the warrant of arrest, or of commitment as should make him liable therefor, and amounted to no more than the making of the original complaint.

As to the liability of the officer: For reasons founded on public policy, and in order to secure a prompt and effective service of legal process, the law protects its officers in the performance of their duties, if there is no defect or want of jurisdiction apparent on the face of the writ or warrant under which they act. The officer is not bound to look beyond his warrant. He is not to exercise his judgment touching the validity of the process in point of law; but if it is in due form, and is issued by a court or magistrate apparently having jurisdiction of the case or subject matter, he is to obey its commands. In such case, he may justify under it although in fact it may have been issued without authority, and therefore be wholly void. *Emery* v. *Hapgood*, 7 Gray, 55. The theory of the law is to protect an officer in his acts of official duty so far as it reasonably can without injustice to others. The rule should be liberally interpreted in the officer's behalf. *Elsemore* v. *Longfellow*, 76 Maine, 128. Where the process is in due form and comes from a court of general jurisdiction over the subject matter, the officer is justified in acting according to its tenor, even if irregularities making the process voidable have previously occurred. *Tellefsen* v. *Fee*, 168 Mass. 188, wherein numerous cases are cited and considered. Where, however, the process is void on its face, or where the court or magistrate issuing the warrant has no general jurisdiction over the subject matter, the officer is not protected by his process.

We have had numerous illustrations of this latter rule in the reported decisions of this court, some of which may be referred to for the purpose of showing the ground upon which all of these decisions have been based. In *Warren* v. *Kelley*, 80 Maine, 512, the

process commanded the officer to seize a vessel for the purpose of enforcing a lien created by a state statute for repairs upon a vessel. The statute authorizing the enforcement of such a lien by a proceeding in the state court was unconstitutional. The court had no jurisdiction over the subject matter, which, by the constitution of the United States, was vested in the federal courts. It was therefore held by this court that the officer was not protected by the process, because the process was absolutely void inasmuch as the state court had no jurisdiction over the subject matter, and, "sufficient appeared upon its face (the process) to show that it was not from a court of competent jurisdiction in reference to the subject matter."

In *Stilphen* v. *Ulmer*, 88 Maine, 211, the plaintiff resided and was arrested in Kennebec County upon a warrant issued by a trial justice of Knox County for violating the fish and game laws in Lincoln County; the trial justice clearly had no jurisdiction over the subject matter of the offense, or over the offender, and these facts were apparent upon the face of the warrant, so that the officer who served the process was not protected by it. In *Brown* v. *Howard*, 86 Maine, 342, the writ under which the officer justified, in an action of trover against him, was void, and the defect was apparent upon the face of the writ and disclosed to the officer a want of jurisdiction. It was therefore held that it afforded him no protection. In *Elsemore* v. *Longfellow*, 76 Maine, 128, where the court said: "The officer is protected unless the process is void, and unless he can see from the face of the process itself that it is void," the court held that the absolute want of jurisdiction in the magistrate was apparent upon the face of the papers and therefore afforded no protection to the officer who justified thereunder. In *Jacques* v. *Parks*, 96 Maine, 268, the tax warrant upon which the officer arrested the plaintiff was "upon its face invalid and void." It was therefore held to afford the officer no protection.

It is apparent that in all of these decisions of our own court, some of which are cited and relied upon by counsel for the plaintiff, the officer was held liable because of the fact that the process under which he attempted to justify was void upon its face, or because the court or magistrate by whom the process was issued had no jurisdiction

over the subject matter, and the process itself clearly showed the want of jurisdiction. None of these cases are authority for the proposition that a warrant, fair upon its face, which discloses no defect or want of jurisdiction, and which was in fact issued by a court having general jurisdiction of offenses of like nature, does not afford protection to the officer. Upon the other hand, the doctrine that an officer is protected under such circumstances is abundantly supported by the authorities.

In *Nowell* v. *Tripp*, 61 Maine, 426, wherein this court held that a collector of taxes was protected by the warrant delivered to him by the assessors, in arresting the plaintiff who had removed to and become a citizen of another town, the court quotes with approval the following language from *Erskine* v. *Hohnbach*, 14 Wall. 613: " Whatever may have been the conflict at one time in the adjudged cases, as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law with authority to pass upon and determine particular facts, and render judgment thereon, it is well settled now, that if the officer or tribunal possesses jurisdiction over the subject matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."

The case of *Hofschulte* v. *Doe*, 78 Fed. R. 436, is very much in point and contains a full discussion of this question. It was there decided that when a court which, though of inferior and local jurisdiction, has general jurisdiction with respect to the violation of the ordinances of the town, entertains a complaint under such an ordinance, and thereupon issues process, fair on its face, to an officer, the process is a justification to the officer in doing the acts thereby

required, notwithstanding the ordinance under which the court acts is invalid, and that no action lies against an officer for the acts done by him pursuant to such process.

In accordance with these general principles it is clear that the officer who served these warrants upon the plaintiff is not liable in damages to him, even if the ordinance upon which the complaints and warrants were based had never gone into effect for the reason before stated. The warrants were issued by the judge of the municipal court of the city of Augusta, which court had general jurisdiction over the subject matter of the violation of city ordinances. When we speak of a court as having jurisdiction over the subject matter, we mean, as said in *State* v. *Neville*, 110 Mo. 345, 19 S. W. 491, "the power to hear and determine cases of the general class to which the proceeding in question belongs." The complaints were for the violation of a city ordinance in regard to the regulation of public carriages. The city had power to pass such an ordinance, express authority therefor being given by the statute R. S., c. 4, sec. 93, paragraph 9. This ordinance was duly passed by the city government, and only claimed to be invalid or ineffective because it was never published in some newspaper printed in the city as required by the statute referred to. The warrants contained nothing upon their face to indicate that the court which issued them, and which had general jurisdiction over the subject matter, did not have jurisdiction over this particular offense, or that the facts stated in the complaint did not constitute an offense because of this failure to comply with the preliminary requisite as to publication. If it were necessary for an officer, before serving a warrant issued by such a court, having general jurisdiction of offenses of this nature, and over the alleged offender, to first make inquiries as to whether all of the necessary preliminaries necessary to make a city ordinance effective had been complied with, it would cause intolerable delay and very seriously interfere with the efficient administration of the criminal laws. The ministerial officer is bound to know the jurisdiction of the court which issues process to him, he is bound to know whether, from constitutional or other reasons, the court has jurisdiction over offenses of that nature, but he is not bound to inquire into the question of fact

as to whether or not a city ordinance in relation to a subject matter, concerning which the city is by statute authorized to pass ordinances, has been published as required by the statute.

We finally come to a consideration of the question as to whether, under the circumstances which have already been stated, the judge of the municipal court is liable in damages to the plaintiff for any of the acts done by him. The rule is well established that judges of courts of superior jurisdiction are not liable to civil actions for their judicial acts, even where such acts are in excess of their jurisdiction. As to whether this immunity from civil liability is equally applicable to a judge of an inferior court, or to a magistrate of limited jurisdiction, is a question about which the authorities are not in entire accord. We favor the doctrine, towards which, we think, there is a strong tendency in more recent judicial opinion, that where a judge of an inferior court, or a magistrate, is invested by law with jurisdiction over the general subject matter of an alleged offense, that is, has the power to hear and determine cases of the general class to which the proceeding in question belongs, and decides, although erroneously, that he has jurisdiction over the particular offense of which complaint is made to him, or that the facts charged in the complaint, constitute an offense, and acts accordingly in entire good faith, such erroneous decision is a judicial one for which he should not be, and is not, liable in damages to a party who has been thereby injured. We can perceive of no good reason why the judge of general local, but inferior, jurisdiction should not be as fully protected against the consequences of his erroneous judicial decision, concerning a matter within the limits of his general jurisdiction over offenses of the same general nature, as should judges of superior courts for their judicial mistakes.

In the application of this doctrine, the distinction must be observed between mere excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. This distinction was very clearly pointed out in the case of *Bradley* v. *Fisher*, 13 Wall. 335, a leading case upon the question of judicial liability. In illustration of this distinction, the court in that case said: " Thus, if a probate court, invested only with authority over wills and the settlement of

estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.   But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by law made an offense, and proceed to the arrest and trial of a party charged with such acts, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject matter is invoked.   Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised.   And the same principle for exemption from liability which obtains for errors committed in the ordinary prosecution of a suit, where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons."   The particular appropriateness of this language above quoted to this case is apparent.

    Numerous well considered decisions of courts of high authority may be cited in support of the doctrine which we have already stated. In *Brooks* v. *Mangan*, 86 Mich. 576, 24 Am. St. R. 137, it was held that a justice of the peace, who acted in good faith, and who had jurisdiction of the person and of the subject matter, was not civilly liable in damages to the person injured for holding an unconstitutional ordinance valid and enforcing it by imprisoning the person charged with the violation of it.   In that case it is said:   "The constitution guarantees no man immunity from arrest.   It guarantees him a fair and impartial trial.   It has provided him with appellate courts, to which he may resort for the correction of errors committed by the inferior courts.   With this he must be content.   These

inferior tribunals should be left to the exercise of their honest judgment, and when they have so exercised it, they are exempt from civil liability for errors. This is the only rule which can secure a proper administration of our criminal laws. The interests of the individual must in such case yield to the interests of the public."

In *Robertson* v. *Parker*, 99 Wis. 652, 67 Am. St. R. 889, it was held that where a judge of limited or inferior jurisdiction secures jurisdiction of a person or cause, but in the progress of his investigation or proceeding decides that he has greater powers than he actually possessed, and therefore pronounces a judgment or sentence in excess of his powers and void, he is not personally answerable to a person subjected to imprisonment under such judgment. In *Grove* v. *Van Duyn*, 44 N. J. L. 654, where this question is considerably discussed, the court said in its opinion: "The assertion, I think, may be safely made, that the great weight of judicial opinion is in opposition to the theory that if a judge, as a matter of law and fact, has not jurisdiction over the particular case, thereby, in all cases, he incurs a liability to be sued by any one injuriously affected by his assumption of cognizance over it. The doctrine that an officer, having general powers of adjudication, must at his peril pass upon the question, which is often one difficult of solution, whether the facts before him place the given case under his cognizance, is as unreasonable as it is impolitic." And again: "Where the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial one, and such officer is not liable in a suit to the person affected by his decision, whether such decision be right or wrong, but when no facts are present, or only such facts as have neither legal value nor color of legal value in the affairs, then in that event, for the magistrate to take jurisdiction is not in any manner the performance of a judicial act, but simply the commission of an official wrong. This criterion seems a reasonable one, it protects a judge against the consequences of every error of judgment, but it leaves him answerable for the commission of wrong that is practically wilful. Such protection is necessary to the independence and usefulness of the judicial officer and such responsibility is important to guard the citizen against official oppression."

In *Calhoun* v. *Little*, 106 Ga. 336, 71 Am. St. R. 254, the court held that a judicial officer of an inferior court was not liable in a civil action to the plaintiff for inflicting a punishment upon him under a void ordinance. In that case the court discusses the question of the distinction between the immunity of a judge of a superior and of an inferior court, and, after citing many cases herein referred to, as well as others, lays down this rule: ' "But all judicial officers stand upon the same footing and must be governed by the same rules. It follows from what has been said that, where the court has jurisdiction of the subject matter of the offense and the presiding officer erroneously decides that the court has jurisdiction of the person committing it, or commits an act in excess of his jurisdiction, he will not be liable in a civil action for damages."

In *Henke* v. *McCord*, 55 Iowa, 378, it was decided that a justice of the peace who enforces an ordinance which is void for want of power in the city to enact it, cannot be held liable therefor in a civil action for damages. In *Thompson* v. *Jackson*, 93 Iowa, 376, it was decided that a justice of the peace, like judges of the superior courts, is protected from personal liability for judicial acts in excess of his jurisdiction, if he acted in good faith believing that he had jurisdiction. The court there said: "The current of legal thought is that the distinction (between judges of superior and of inferior courts) is unreasonable, unjust, illogical, and ought not to obtain." In *Bell* v. *McKinney*, 63 Miss. 187, it was held that where a magistrate had authority to require a person brought before him to give bail for his appearance at a superior court, but, under an erroneous judgment as to the extent of his authority, and in good faith, tried such person, and, upon his conviction, sentenced him to pay a fine or be imprisoned, the magistrate was held not liable in damages to the person aggrieved.

We are aware of some decisions wherein a different conclusion has been reached, of which, perhaps, *Piper* v. *Pearson*, 2 Gray, 120, (68 Mass. 120) may be a leading case, but we prefer the more liberal doctrine already stated, which is so abundantly supported by the authorities already referred to, as well as by others. The facts already stated bring the case of the judge who acted upon the original

complaints entirely within this doctrine of immunity from civil liability for judicial errors. He was the judge of the Augusta Municipal Court, a court of record, having original jurisdiction over all offenses of this character, the violation of city ordinances, within the limits of his territorial jurisdiction.

His court had jurisdiction over the general subject matter, as we have already defined that expression, and as it is defined in *Hunt* v. *Hunt*, 72 N. Y. 217. As we have already seen, the city had express statutory authority to pass such an ordinance, and it had been duly passed by the city council and published among the ordinances of the city, although not published, as required by statute before taking effect, in a newspaper. The judge had every reason to believe that all of the preliminaries required by statute had been complied with and had no knowledge or reason to suppose that this particular ordinance had not been published in a newspaper as required. There is no suggestion that he did not act in entire good faith in the premises. He therefore, should not be held liable in damages to the plaintiff, whose rights were fully protected by the opportunity to appeal from an erroneous decision to an appellate court where the error might be corrected.

Suppose this objection to the validity of the ordinance had been raised at the hearing and the judge had then decided, although erroneously, that the ordinance, as a matter of fact had been published as the statute required, it would hardly be claimed that he was liable because of this erroneous decision upon the question of fact. Or suppose, the point being made, he had decided as a matter of law still erroneously perhaps, that the statute was merely directory and that the ordinance was valid and effective notwithstanding the fact that it never had been published in a newspaper, it could then hardly be claimed that he was liable in damages to a party aggrieved for his erroneous judicial decision of a question that arose and had to be passed upon by him in his judicial capacity during the course of the proceedings. He is no more liable in our opinion because of the fact that he had no knowledge of this failure as to one of the preliminary requisites and because the point was not made at the hearing before him.

For these reasons, none of these defendants are liable, and the entry will be,

*Judgment for defendants.*

---

### DISSENTING OPINION.

EMERY, J.   I think the majority opinion holds doctrines impairing the right of personal liberty and subversive of long established rules of law of this state.  I wish to leave upon record my regret and dissent.

I.   That under the law of this state an inferior court of limited jurisdiction has authority to issue a warrant for arrest upon a complaint which charges only an innocent act, one not in violation of any existing law :—

I pass over the cases cited in the opinion upon the subject of jurisdiction of courts generally, for the reason that I think they will be found upon examination (notably the case of *Bradley* v. *Fisher,* 13 Wall. 335, cited as the leading case) to relate mainly, if not wholly, to superior courts of general jurisdiction, which are presumed to have jurisdiction until the want of it affirmatively appears.   The Augusta Municipal Court, however, is an inferior court of limited jurisdiction, which is presumed not to have jurisdiction until it affirmatively appears that jurisdiction has been expressly conferred.   *Hersom's Case,* 39 Maine, 476; *Gurney* v. *Tufts,* 37 Maine, 130; *Thurston* v *Adams,* 41 Maine, 419, 423; *Wills* v. *Whittier,* 45 Maine, 544; *Inman* v. *Whiting,* 70 Maine, 445.   It has jurisdiction expressly conferred by statute to entertain complaints "charging a person with the commission of an offense," R. S., ch. 133, sec. 6; but I find no statute nor other authority conferring upon it jurisdiction to entertain a complaint only charging an act which is not an "offense."

A complaint was made to this inferior court charging the plaintiff with nothing but driving a public carriage for hire in the streets of Augusta without having a license therefor from the municipal officers of Augusta.   It is said in the opinion that the complaint was for

a violation of a city ordinance of Augusta, yet it is conceded in the opinion there was in force no ordinance nor other law requiring such a license.   True, the city government began the ordaining such an ordinance but failed to complete it, to give it life.   It was left a mere simulacrum, without life or force.   There was in force no city ordinance nor other law to be violated by the act charged, and hence the complaint was not, and could not be, for violation of a city ordinance or other law.   The complaint did not charge the plaintiff "with the commission of an offense," either against statute or ordinance. On the contrary, the act charged was, as to the law, an entirely innocent one, as much so as drinking pure water or breathing pure air.   Therefore, in holding that the Municipal Court had jurisdiction of this complaint the opinion holds in effect, if not in terms, that an inferior court of limited jurisdiction has authority to issue a warrant for arrest upon a complaint charging only an innocent act, one not in violation of any existing law.

The logical result of this doctrine is that in this free state any person is legally subject to arrest and trial (and to imprisonment in jail if too poor to furnish the bail required) upon no other charge than drinking pure water or breathing pure air.   This reductio ad absurdum alone should show the unsoundness of the doctrine.   The test of the soundness of a legal doctrine is not what would be done, but what could be done under it.

I understand the argument of the opinion to be that even an inferior court or magistrate must necessarily decide whether the act charged in the complaint made to him is one forbidden by law, and hence if he decides that it is, that decision is a judicial one which should be held valid until reversed on appeal or writ of error.   Even if that be the law as to superior courts of general jurisdiction, I submit it is not the law as to inferior courts of limited jurisdiction like the Augusta Municipal Court.   It is axiomatic that no inferior court can acquire jurisdiction, or the semblance of jurisdiction, by deciding that it has jurisdiction.   *Gurney* v. *Tufts*, 37 Maine, 130, (at p. 134); *Gregory* v. *Gregory*, 78 Maine, 187.   If it be the law, then however evident that no offense is charged, that the act charged is not punishable but innocent,— the accused can have no relief upon

habeas corpus but must remain in custody and perhaps in jail for months and perhaps years until the judgment of the appellate court is rendered. It is common learning that the writ of habeas corpus cannot be used as a writ of error or appeal.

Can there be any doubt, however, that this plaintiff would have been entitled to an immediate, unconditional discharge upon habeas corpus, had he invoked that writ? As long ago as Bacon's Abridgment it was declared: "If the commitment be against law as being made by one who had no jurisdiction of the cause, or *for a matter for which by law no man ought to be punished,* the court are to discharge." Bac. Ab. Hab. Corp; B. 10 (quoted from *Ex parte Parks,* 93 U. S. 22). In *Ex parte Tong,* 108 U. S. 556, the court said: "The judicial proceeding under it (habeas corpus) is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act." In *Ex parte Siebold,* 100 U. S. 377, the court said: "Personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on habeas corpus." In *Ex parte Yarbrough,* 110 U. S. 651, at page 654, the court said: "If the law which defines the offense and prescribes its punishment is void, the court was without jurisdiction and the prisoners must be discharged." In *Ex parte Coy,* 127 U. S. 731, at page 758, the court said: "The validity of the statute under which a prisoner is held in custody may be inquired into under a writ of habeas corpus as affecting the jurisdiction of the court which ordered his imprisonment." These declarations of the law by the Supreme Court of the United States seem peculiarly applicable to this case.

The logical result of the authorities is stated by Spelling as follows: "Since no court has jurisdiction to punish a party who has violated no law, however reprehensible his conduct from a moral standpoint, it necessarily follows that one convicted or held under color of judicial authority for violating an unconstitutional statute or a void municipal ordinance is entitled to an unconditional discharge on habeas corpus," Spelling on Ex. Relief, sec, 1205. A great

number of cases in support of the above may be found cited in Spelling, sec. 1205, and in Church on Habeas Corpus, sec. 83.

This court, also, has hitherto been emphatic in asserting the right of personal liberty against arrest for what is not an offense. In *Gurney* v. *Tufts*, 37 Maine, 130, at p. 133, the court said: "If the magistrate issues precepts, or orders arrests for acts not known to law as offenses . . . he can, when thus transcending the bounds of his authority, afford no more protection to an officer than could one not a magistrate." In *State* v. *Learned*, 47 Maine, 431, the court declared that the legislature could not confer authority to thus abridge the constitutional right of personal liberty. It said (p. 433) "What we do decide is, that the legislature cannot dispense with the requirement of a distinct representation of an offense against the law. It cannot compel an accused person to answer to a complaint which contains no charge, either general or particular, of any offense." See also *Herson's Case*, 39 Maine, 476, where this rule was applied.

Prior to the majority opinion in this case, it was to me unthinkable that any Justice could have refused to discharge this plaintiff upon habeas corpus. Even now I hope, and indeed believe, the Justices will disavow this doctrine of the opinion when confronted with a demand for his liberty by one arrested for an innocent act, or even under a supposed statute or ordinance having in fact no force.

II. That under the law of this state an inferior magistrate of limited jurisdiction is not liable in trespass for ordering an arrest of the person when he had no jurisdiction or authority to do so:—

I will not follow the majority opinion in its inquiry as to the law of other states, although the law is laid down in that standard law book of recognized authority, Cooley on Torts, as follows: "It is universally conceded that when inferior courts and judicial officers act without jurisdiction, the law can give them no protection whatever." (p. 489). Nor will I delay to discuss the reason of either rule. Whatever the rule in other states and whatever the reasons pro and con, I submit that it has hitherto been the accepted, unquestioned law of this state that an inferior magistrate is liable in trespass for ordering an arrest without jurisdiction, or in excess of jurisdiction. The case *Piper* v. *Pearson*, 2 Gray, 120, now condemned in the majority

opinion, has been repeatedly cited by this court with approval in support of this rule, (in 41 Maine, 419, 64 Maine, 321, 66 Maine, 350, and perhaps in other cases). The doctrine of that case was explicitly and vigorously affirmed as the settled law of this state in *Waterville* v. *Barton*, 64 Maine, 321, where the court said: "We start with the well settled rule that inferior courts of limited jurisdiction are responsible in trespass to those whom their acts affect, when they act without or in excess of their jurisdiction, and not otherwise." This rule has been made the rule of decision in the following cases, in each of which the official ordering the arrest or seizure believed and decided that he had jurisdiction to make the order and yet was held liable in trespass because in law and fact he did not have jurisdiction. *Mosher* v. *Robie*, 11 Maine, 135; *Spencer* v. *Perry*, 17 Maine, 413; *Herriman* v. *Stowers*, 43 Maine, 497; *Wills* v. *Whittier*, 45 Maine, 544; *Waterville* v. *Barton*, 64 Maine, 321; *Call* v. *Pike*, 66 Maine, 350. See also *Thurston* v. *Adams*, 41 Maine, 419. I find no case to the contrary.

Whatever may be said of a rule of law declared by a single decision only, it becomes settled beyond discussion when iterated by repeated decisions. *Wright* v. *Sill*, 67 U. S. (2 Black), 544. "We will not enter into an inquiry as to the reasons upon which it (a rule) is founded, with the purpose of vindicating its correctness. It has stood unquestioned for more than fifteen years, and doubtless has been often followed by nisi prius courts, and esteemed by the profession as a part of the body of the laws of the state. Stability in the laws is of the first importance to the people and to the courts," *Davidson* v. *Briggs*, 61 Iowa, 309.

The rule for this state has been settled by repeated decisions without dissent, and has stood as a part of the law of the state for three-fourths of a century. What rule of law in this state is more firmly or longer established? For the court now, without any change in circumstances or conditions, to disregard the rule because the present Justices do not like it or because some courts in other states do not regard it as the law of those states, seems to me a disobedience to the law of this state by its appointed conservators, and a fruitful cause of uncertainty where certainty is essential. "Stability in the laws

is of the first importance to the people and the courts." With an unstable court, however pure its Justices, the government is after all one of men and not of laws.

. III. As to the officer serving the warrant:—He was bound to. know what was law and what was not law, as much so as a private citizen. The difficulty of knowing the law no more excuses him than it excuses the private citizen. Being bound to know the law, however difficult the task, he could and should have known from the inspection of the warrant that the act charged was an innocent one, not in violation of any law, and hence did not authorize an arrest.

In *Elsemore* v. *Longfellow*, 76 Maine, 128, the officer was held liable because no statutory cause for arrest was alleged in the precept. In *Warren* v. *Kelley*, 80 Maine, 512, the officer was held liable because the supposed statute authorizing the seizure had no force, being unconstitutional. In the case at bar no statutory or other legal cause for arrest was alleged or appeared in the precept; the supposed ordinance supposed to authorize it admittedly had no force. The officer having been held liable in the cases cited for the reason therein given, I do not see why he should not be held liable in this case for the same reason. Despite the able argument in the opinion, I think it remains unrefuted and irrefutable that a lifeless ordinance and a lifeless statute are equally without force whatever the cause, and that the one can afford no more protection than the other.