Carol MacARTHUR

v.

DEAD RIVER COMPANY.

Supreme Judicial Court of Maine.

Dec. 19, 1973.

Stern & Stern by Marshall A. Stern, Bangor, for plaintiff.

Rudman, Rudman & Carter by Gene Carter, Torrey A. Sylvester, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The plaintiffs, Carol MacArthur and her two minor children, were seriously burned in a fire which destroyed an apartment house in which they were living in Woodland. The action against the defendants was premised on negligence. At the conclusion of the plaintiffs' case the defendants moved for a directed verdict, which motion was granted. Subsequently the plaintiffs filed a motion for a new trial primarily because a subpoenaed witness failed to appear and it was claimed that her testimony, had it been available, would have established a basis for allowing the

case to go to the jury. A hearing was had on this motion and it was denied.

Plaintiffs seasonably appealed from these rulings. We deny the appeal.

■ Dealing with the motion for a new trial, we find no error in the ruling made. We have read the testimony of the witness who failed to respond to the subpoena and it would have added nothing to the plaintiffs' case. Furthermore, although included in the statement of points on appeal, this point was not briefed or argued and we consider it to have been abandoned.

■ The plaintiffs' case proceeded on the theory that an explosion of propane gas was the agency causing the fire. This gas, the plaintiffs allege, was allowed to enter their apartment through the negligence of the defendants in the installation, maintenance and supervision of their service installations on the exterior of the building. If a fair preponderance of the evidence did not prove propane gas to be the origin of the fire it is clear that the plaintiffs have failed to establish any basis for a finding against the defendants. The Justice below, of course, would have this basic concept in mind and we test his ruling by the well established principle of viewing the evidence, including every justifiable inference therefrom, in the light most favorable to the plaintiffs so that we may decide whether by any reasonable view thereof a proper jury issue was presented. Boetsch v. Rockland Jaycees, 288 A.2d 102 (Me.1972).

■ Plaintiffs and Mr. MacArthur moved into their apartment approximately three weeks before the fire. The building was owned by persons other than the defendants. There was no evidence that the defendants either owned, controlled, managed or supervised any of the interior installations or appliances which used propane gas. The plaintiffs were not customers of either defendant, although defendants did supply other tenants in the building with bottled propane gas, one of whom occupied at one time prior to the fire an apartment adjacent to that occupied by plaintiffs.

There were no functional gas appliances in the plaintiffs' apartment, which was served for heating and cooking purposes by a kerosene burning stove. There were at least three fifty-gallon barrels designed to hold kerosene or fuel oil in the common entryway from one of which this stove was supplied.

Until a week before the fire the adjacent apartment had been occupied by a Mr. and Mrs. Rivers. In this apartment was a properly functioning gas stove which remained there after the Rivers moved. Mrs. MacArthur, in fact, had used the Rivers' stove for cooking.

The plaintiffs introduced no evidence that, prior to the fire, there was any odor of escaping propane gas anywhere in the building. Mrs. MacArthur herself testified that during the time she had occupied the apartment she had never detected this distinct odor from any source.

On the evening prior to the fire plaintiffs had been visiting with the Rivers in their new residence and did not return until approximately 2 a. m. On entering the hallway to the apartment she testified that she could smell an odor which she readily identified as that which normally comes from a paper mill using the kraft process. Such a mill was located in Woodland only a short distance from this apartment. She testified that when she entered her apartment this odor seemed somewhat stronger.

As the MacArthurs went to their apartment, Mr. MacArthur stopped to fill a glass bottle from the oil storage tank for the purpose of lighting the kerosene stove. On entering the apartment, Mrs. MacArthur gave her husband matches with which to light the kerosene stove and then proceeded to prepare her children for bed. She testified that she observed him light a

match and, after some lapse of time, there was an explosion and the apartment became engulfed in flames. The record discloses this testimony:

"Q. And you say that you saw your husband light a match in the apartment?

A. Yes, I did.

Q. You were standing in the bedroom door?

A. Yes.

Q. You then turned and went into the bedroom—

A. Yes.

Q. —and some period of time elapsed after that before the fire occurred?

A. Yes.

Q. Would it be a minute, or two minutes or—

A. I don't know. It wasn't very long, just long enough for me to go back into the bedroom where the boys were.

Q. You did have an opportunity to partially, at least, undress one of the boys?

A. Yes.

Q. Would it be fair to say it would be about a minute or two minutes that went by?

A. Yes."

Mr. MacArthur was not a witness.

An employee of the defendants testified that he had installed one cylinder of propane gas for another tenant, but this was an appreciable time prior to the fire. He described the area where the hundred pound gas cylinders are attached to the tubing servicing various appliances, and it could be inferred that four installations were possible, although one was not in use. About four weeks after the fire he was sent to pick up gas cylinders lying on the ground near the burned building, all but one of which belonged to the defendants.

This witness described the instructions given their employees by the defendants for connecting a gas cylinder to an installation. The employees were required to test for leaks and not to turn on the exterior regulator which allows gas to flow into the system unless there was someone at home in the apartment served thereby.

The plaintiffs produced another witness who at one time had worked for the defendants and who had once installed a propane gas cylinder on a service connection in this particular building. This witness had severed his connection with the defendants approximately two months prior to the fire but he did occupy an apartment in the burned building representing the owner in its management. Acting as such, he had removed a space heater from the plaintiffs' apartment and inserted a cap in the gas line connected thereto which he tested for leaks and found none.

The final witness for the plaintiffs was the local manager of the defendants. From the records of the defendants he was able to say that three apartments had been serviced by the defendants with propane gas. Although he was aware that the Rivers family had vacated their apartment, he was never requested to disconnect or remove the gas cylinder which serviced it. The defendants, according to this witness, did not own nor were they requested to assume any responsibility for the interior installations which would include the tubing leading from the exterior cylinders to the various gas appliances within.

The appellants urge, in argument, that the jury could infer from these facts that propane gas was the "likely cause of this

disaster", and cite Hersum, Admr. v. Kennebec Water District, 151 Me. 256, 117 A. 2d 334 (1955)' as supportive authority. The facts in *Hersum* go far beyond those in the record before us. There, expert testimony was presented indicating the presence of explosive quantities of gas in the burned structure, the source of this gas being traced to a leaking main which had been broken by the defendant's employees while excavating with a power shovel. Here, there was no evidence of escaping gas from any source prior to the fire. Furthermore, at the precise moment of the fire's origin, Mr. MacArthur was in the process of replenishing the oil supply in the kitchen stove and igniting it. His conduct at this crucial moment—*not having been explained*—could very logically have been responsible for the ensuing fire. In short, a rational explanation of the origin of the fire would be the careless handling of the glass bottle of kerosene while lighting the kerosene stove.

Considering the highly flammable nature of propane gas,[1] it is equally irrational to assume that it would require "a minute or two minutes" to ignite after Mr. MacArthur lit the kerosene stove, assuming the gas was then concentrated in that area in sufficient quantity to explode.

For the jury to have concluded, on the evidence in the record, that this fire was caused by an explosion of propane gas would be the result of pure speculation. The Justice below correctly concluded that the plaintiffs had failed to maintain the burden of proof demanded of them. His ruling was correct.

The entry is:

Appeal denied.

WEBBER, J., sat at argument but retired before this opinion was adopted.

All Justices concurring.

[1]. Two witnesses, both employees of defendants, gave testimony describing the precautions usually taken to prevent gas from escaping because of its dangerous propensities which required it to be "handled properly."