**ATLANTIC ACOUSTICAL & INSULATION CO.**

**v.**

**Albert MOREIRA.**

Supreme Judicial Court of Maine.

Dec. 2, 1975.

264

Preti & Flaherty by Frederick A. Johnson, Portland, for plaintiff.

Walter E. Foss, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Plaintiff Atlantic Acoustical & Insulation Co. (Atlantic) instituted this action for declaratory and injunctive relief against the defendant Albert Moreira. A trial on the merits was held before a Justice of the Superior Court (Cumberland County). From a judgment for the defendant, the plaintiff has appealed. We deny the appeal.

The gravamen of the complaint was that the defendant, who was at one time the treasurer of Atlantic, a corporation, as well as a director and fifty percent shareholder, had either knowingly or negligently supplied Atlantic's accountants with false and misleading information which was relied upon in a valuation of the corporation's stock. It was alleged that Moreira thereby breached his fiduciary duty as an officer and director, and that his actions constituted a fraud on Atlantic. The plaintiff sought a declaratory judgment to this effect pursuant to 14 M.R.S.A. § 5951 et seq., as well as a permanent injunction under M.R.Civ.P. Rule 65.

We note at the outset that the Superior Court's order of judgment does not explicitly distinguish findings of fact from conclusions of law. In a case tried before a Justice sitting without a jury, M. R.Civ.P. Rule 52(a) places the onus on the parties to request that the court make specific findings of fact. No such request was made by either party in this case. In the absence of designated factual findings, "[W]e must proceed on the assumption that the trial Justice found for the appellee on all factual issues necessarily involved in the decision." *Bangor Spiritualist Church, Inc. v. Littlefield*, Me., 330 A.2d 793, 794 (1975); *Blue Rock Industries v. Raymond International, Inc.*, Me., 325 A.2d 66, 73 (1974).

The Justice below could have predicated his decision on the following facts:

Atlantic is a construction subcontractor engaged in the installation of pipe insulation. Until April 8, 1971, the corporation was owned jointly by its president, Curtis Lovejoy, and its treasurer, Albert Moreira, both of whom were also on the board of directors. Each owned ten of Atlantic's twenty shares of outstanding stock. Lovejoy negotiated Atlantic's contracts and supervised its jobs. Moreira was mainly responsible for keeping the financial records, although Lovejoy also had access to Atlantic's books. Moreira was dependent upon Lovejoy for reports on the day-to-day operation of the business.

Early in 1971, a rift developed between Lovejoy and Moreira, and they decided that one or the other of them would sell his stock back to the corporation and sever all his ties to the business. In March, 1971, Atlantic asked an accounting firm, which was then in the process of completing the corporation's audit for the year ending February 28, 1971, to determine the fair market value of its stock.

The accountants derived their information for the audit and stock valuation from Atlantic's financial records and from conversations with Lovejoy and Moreira. Atlantic employed a standard double-entry accounting system. As an adjunct to this system, material and labor costs were apportioned to various jobs in progress. Records of these operating costs were kept in separate folders for each job, but were not incorporated into the bookkeeping system itself.

At the time of the March audit, there was a cost record missing from the folder for a job in Augusta which detailed some $4,400 in expenses which had accrued in September, 1970. The cause of this omission is unknown.

Pursuant to Atlantic's request, the accountants, who had no knowledge as to which of the owners would sell out, calculated that ten shares of Atlantic's stock were worth $28,000 to $30,000. Lovejoy and Moreira then resolved that the latter would leave the business and they accordingly negotiated an agreement dated April 8, 1971, whereby Moreira agreed to resign as a director and officer and redeem his stock, and in addition covenanted not to engage in a similar business within Maine for a period of three years. Atlantic paid Moreira $8,400 in cash, and tendered him a promissory note for $19,600. Payment on the note was due in two installments, $10,000 on April 1, 1972, and the balance, plus interest, on April 1, 1973. The total cost of the "buy-out" was thus $28,000, plus interest.

Later in 1971, Lovejoy realized that Atlantic was sustaining losses on several of the jobs which had been in progress at the time of the audit earlier in the year, and consulted the accountants for advice. It was discovered that, shortly after February 28, 1971, costs were added to certain of the ongoing jobs in amounts that substantially exceeded billings for the equivalent period. The accountants concluded that the contracts in question had not been correctly stated in the audit and that if they had been correctly stated, they would have contributed an operating loss instead of the

profits recognized in the audit. Had all this information been known to the accountants at the time of the audit, the fair market value of ten shares of Atlantic's stock would have been appraised at approximately $10,000.

The effect that the missing cost record on the Augusta job would have had on the accountants' valuation of Atlantic's stock is undetermined. The inclusion of the missing cost record would have reduced the anticipated profit on the Augusta job, and this *might* have led the accountants to further investigate the Augusta contract. This investigation *might*, in turn, have caused the accountants to reexamine Atlantic's other contracts. The accountants were, however, ultimately uncertain that had they been aware of the missing cost record at the time of the audit, they would have discovered that some of Atlantic's jobs would eventually generate losses.

The plaintiff initiated this action shortly after the first installment on the note fell due, and succeeded in obtaining a temporary restraining order followed by a preliminary injunction preventing the defendant from suing on the note and attaching Atlantic's property.

The substance of the court's order dismissing the action is as follows:

Upon the evidence presented, the Court finds for the Defendant for the reason that the Plaintiff has failed to prove that the Defendant intentionally withheld

information from the auditors, or that the failure of the auditors to have all information resulted from any neglect on the part of the Defendant, or even that the Defendant knew or should have known that the auditors' information was incomplete. Furthermore, the Plaintiff has failed to satisfy the Court that the missing information would have had a substantial impact upon the auditors' appraisal of stock value.

The plaintiff attacks the judgment below on both factual and legal grounds. *First,* it is argued that the presiding Justice's findings of fact are "clearly erroneous" and must be set aside under the authority of M.R.Civ.P. 52(a). *Second,* the plaintiff would have us conclude that the court erred in its decision absolving the defendant of legal responsibility for the misstatement of the value of Atlantic's stock.[1]

█ M.R.Civ.P. 52(a) mandates that findings of fact, whether express or implied, shall not be set aside unless clearly erroneous. *Gay v. Gay's Super Markets, Inc.,* Me., 343 A.2d 577, 579 (1975). Findings of fact which are supported by credible evidence are not clearly erroneous. *Leighton v. Leighton,* Me., 329 A.2d 164, 166 (1974).

█ We hold that the facts as we assume them to have been found by the presiding Justice are amply supported by credible evidence and we accept them as conclusive. The plaintiff's contention that the

---

1. Specifically, the plaintiff asserts (a) that the court failed to consider the fiduciary duty of the defendant as an officer and director of Atlantic; (b) that the court failed to recognize that the burden rested on the defendant to "justify" his dealings with Atlantic; (c) that the court failed to consider that the redemption price of the defendant's stock was based upon a mutual mistake of fact. We consider that points (a) and (b), notwithstanding their amorphous syntax, are sufficient to raise the issues of whether the court below erred by failing to hold that the defendant breached a fiduciary duty owed to Atlantic and perpetrated a fraud on the corporation.

Point (c) was not made part of the complaint or raised at trial. As to this issue, we see no reason to depart from our sound tenet of appellate practice that "[A]n issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case." *Walsh v. City of Brewer,* Me., 315 A.2d 200, 209 (1974). The plaintiff's additional contentions in its statement of points of appeal were neither briefed nor argued, and we consider them to have been abandoned. *MacArthur v. Dead River Company,* Me., 312 A.2d 745, 746 (1973).

factual findings are clearly erroneous is without merit.

■ The plaintiff's argument that the court erred in its legal conclusion begins with the proposition that the defendant breached his fiduciary duty as a director and the treasurer of Atlantic. While it is true, as a general matter, that a director or officer stands in a fiduciary relationship to his corporation and its shareholders, *Livermore Falls Trust and Banking Co. v. Riley*, 108 Me. 17, 21, 78 A. 980, 981 (1911), this broad principle takes on meaning and significance only in a particularized factual context. "Whether officers have been guilty of mismanagement in a particular case is largely a matter of fact dependent upon the circumstances of each case." 3 W. M. Fletcher, Cyclopedia of the Law of Corporations, § 1030 at 597 (Perm.Ed.1965).

That aspect of the defendant's corporate duty with which the plaintiff is manifestly most concerned is Moreira's former responsibility for Atlantic's bookkeeping. The plaintiff theorizes that since the defendant had the chore of maintaining Atlantic's financial records, it is he who must shoulder the fault for the inaccuracy of the information that was furnished to the accountants for the stock valuation.

■ The assumed facts as found by the court below completely belie the plaintiff's hypothesis. While it is undisputed that Moreira was Atlantic's bookkeeper, this fact without more is hardly sufficient to establish that it was the defendant's act or omission which caused the accountants' stock valuation to be based on incomplete information.

It was Lovejoy, Atlantic's president, who negotiated the corporation's contracts and supervised its various jobs. Moreira had no personal contact with the job sites, and was largely dependent upon Lovejoy for reports on the status of Atlantic's contracts. Moreover, the corporation's financial records were not within Moreira's exclusive control, as both he and Lovejoy had access to the files. The impression which distinctly emerges from the facts, in short, is that Lovejoy was in a position to know at least as much about Atlantic's financial state as Moreira.

The plaintiff places great emphasis on the fact that a cost record was missing from the Augusta job folder at the time that the accountants conducted the stock valuation, but there was absolutely no evidence that this allegedly critical misplacement was any more attributable to Moreira than to Lovejoy.

■ We conclude that the presiding Justice was entirely correct in his conclusion that the defendant did not breach his fiduciary duty as a director and officer of Atlantic. The evidence was plainly insufficient to support any other finding. Under the law, the defendant, as an officer and director of Atlantic, was charged with exercising "all due care and vigilance to safeguard the property and protect the rights of the corporation." *Livermore Falls Trust and Banking Co. v. Riley,* supra, 108 Me. at 22, 78 A. at 982.[2] There is nothing in the record to suggest that Moreira failed to discharge this obligation.

Having expressed our agreement with the Justice below that there was no breach of fiduciary duty on the part of the de-

2. The facts which gave rise to the instant litigation occurred prior to the effective date of the *Maine Business Corporation Act,* 13-A M.R.S.A. § 101 et seq., and that Act is therefore not controlling. We note, however, that 13-A M.R.S.A. § 716 imposes a duty on corporate officers and directors which is quite similar—if not identical—to the duty formerly imposed by our common law. Sec. 716

fendant, we now address the assertion that reads, in pertinent part, "The directors and officers of a corporation shall exercise their powers and discharge their duties in good faith with a view to the interests of the corporation and of the shareholders and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

**268**

the Justice erred by rejecting the plaintiff's claim that the defendant perpetrated a fraud on Atlantic.

■ In *Horner v. Flynn*, Me., 334 A.2d 194, 203 (1975), we said that actionable fraud consists of "a representation of a material fact (or omission to reveal a material fact) which is false and known to be false or made recklessly as an assertion of fact without knowledge of its truth or falsity, which is made with the intent that it be relied upon by plaintiff."

■ In that same case, we also had occasion to discuss the burden of proof which rests on the plaintiff who alleges fraud: "We think it is the considered policy of the law that a litigant who asserts fraud will be held to fail to meet his burden of proof by a preponderance of the evidence unless he produces evidence having strong capability to induce belief." *Id.* at 200.

■ An application of the principles gleaned from *Horner* enables us to succinctly dispose of the plaintiff's fraud claim. The evidence which the plaintiff adduced in an attempt to prove fraud by the defendant can not fairly be characterized as "evidence having strong capability to induce belief." There was no credible evidence that the defendant knowingly or recklessly misrepresented Atlantic's financial state to the accountants, nor was there any evidence that the defendant conveyed information about Atlantic to the accountants with the intent or the knowledge that such information would be detrimentally relied on by the corporation. At the time of the stock valuation, Lovejoy and Moreira had not decided which of them would leave the business. It was not until after the value of the stock had been determined that it was decided that Moreira would redeem his stock and terminate his relationship with Atlantic. We can thus conceive of no motive that Moreira might have harbored to misrepresent Atlantic's financial

condition to the accountants. At the time of the valuation, Moreira was as much a potential loser as Lovejoy from an inflated assessment of the corporation's worth.

The buy-out of the defendant by Atlantic was in every sense "arm's-length." The fortuitous circumstance that Atlantic must suffer the consequences of a business deal gone sour may enlist our sympathy, but it does not entitle the plaintiff to a legal remedy.

The entry must be:

Appeal denied.

Costs to the defendant.

All Justices concurring.

WERNICK, J., did not sit.