2000 ME 160

**Rory HOLLAND**

v.

**Moses SEBUNYA et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 17, 1999.

Decided Aug. 17, 2000.

Rory C. Holland, Portland, pro se.

John C. Rohde, Portland, James Michael Stovall, Scarborough, Thomas B. Wheatley, Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Rory Holland appeals from the entry of a summary judgment in the Superior Court (Cumberland County, *Crowley, J.*) in favor of Moses Sebunya and several other named defendants. Holland contends that the court erred when it determined that Sebunya had the authority to request the police to remove Holland from an Executive Committee meeting of the Portland Branch of the National Association for the Advancement of Colored People (the Portland Branch), and that because Sebunya exceeded his authority, the court improperly entered summary judgment against him. Concluding that Holland has presented insufficient evidence as to each of his claims, we affirm the judgment.

[¶ 2] The facts in this case, viewed most favorably to Holland, against whom the summary judgment was entered, are essentially as follows: On February 13, 1995, the Executive Committee of the Portland Branch held a meeting in a room rented solely for that purpose at the Green Memorial A.M.E. Zion Church in Portland. The Executive Committee is the governing body of the Portland Branch. At the time of the February meeting, Sebunya was beginning his two-year term as President of the Portland Branch. The Executive Committee holds a monthly meeting separate from the regular monthly meetings held for the general membership at Wood-

ford's Congregational Church. The meetings are open to the public,[1] but only the general membership meeting is advertised in the local media. As president, Sebunya presided over both meetings. The Portland Branch has adopted Robert's Rules of Order to govern its meetings.

[¶ 3] Attendance at the February 1995 meeting was sparse. Only eight people were present at the meeting, and only one, Holland, was not a member of the Executive Committee.[2] Holland contends that he was not at the meeting solely as a member of the public, but that he had been deputized by the Portland Branch as its "court liaison." In this capacity, he contends that he was to report on ways the Portland Branch might influence the court system to further racial equity.

[¶ 4] A member of the Portland Branch, Candy Wright, had alleged she was the victim of police brutality at the hand of the Portland Police Department. Sebunya was an employee of the city, and assigned to the police department.[3] Holland and others felt that Sebunya had a conflict of interest between his duties as a police employee and his advocacy duties as Portland Branch president. Sebunya had not advocated on behalf of Ms. Wright after Portland Police Chief Chitwood had requested that he not get involved in that case. According to Holland, Sebunya indi-

cated that he was unwilling to do anything to challenge Chitwood.

[¶ 5] Holland talked with a member of the Executive Committee, Gerald Talbot, about how to proceed, including whether he should attend the meeting. Talbot invited Holland to come to the meeting, even though Talbot himself would not be able to attend. Holland attended the Executive Committee meeting to deal with the Wright matter and what he perceived as Sebunya's conflict of interest. Almost immediately, Sebunya approached Holland and asked him why he was there. Holland refused to respond. Sebunya then told Holland that he would have to leave; Sebunya called the police department for assistance.[4] Two police officers were dispatched to the church. Before they arrived, however, the Executive Committee discussed what they should do in these circumstances. It was at this point that Holland told the committee about Talbot's invitation. A committee member sought to contact Talbot to discover if he had invited Holland, but was unsuccessful.

[¶ 6] When the two officers arrived, they met with Sebunya, who told them that Holland had refused to leave what Sebunya said was a closed meeting.[5] The officers asked Holland to leave the meeting, but he did not respond. They then informed Holland that he would be arrested if he refused to leave. Holland got up and began walking with the police toward the

1. Sebunya contends that the meetings of the Executive Committee of the Portland Branch are not open to the public, and non-Executive Committee members can attend only if they are invited by an Executive Committee member and have received prior approval from the President. Holland, however, presented contrary evidence.

2. Although a member of neither the Executive Committee nor of the Portland Branch, Holland argues on appeal that his appointment as court liaison conferred on him a type of membership status. Holland did not make this argument below. An "issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case." *See Maine Real Estate Comm'n v. Kelby*, 360 A.2d 528, 530 (Me.1976).

3. Sebunya's precise job title was "the Cultural Affairs Coordinator for the City of Portland." Although he was a police department employee, Sebunya did not have supervisory authority over any officers.

4. The decision to call the police was made in accordance with the established procedures of the Portland Branch.

5. Although Sebunya provides some evidence in support of this contention, and, indeed, bases part of his argument on it, that evidence is contradicted by Holland's evidence that the meeting was open to the public.

door. Before he had left the room, however, he stopped and asked if he was under arrest. The officers placed him under arrest for disobeying their orders to leave the room. Holland was then taken from the room.

[¶ 7] In February of 1997, Hollad brought this action in Superior Court against Sebunya, several other members of the Executive Committee, and the National Association for the Advancement of Colored People. Holland's complaint alleged the denial of his rights under the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution; violations of 42 U.S.C. §§ 1983, 1985, and 1986; false imprisonment; violations of Article I, Sections 1, 5, and 6–A of the Maine Constitution; malicious prosecution; intentional and negligent infliction of emotional distress; and prima facie tort. Sebunya moved for a summary judgment. After concluding that Sebunya acted within his authority when he ejected Holland, the court entered a summary judgment in favor of Sebunya. Holland appeals from that judgment.

[¶ 8] We review the entry of summary judgment "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Peterson v. State Tax Assessor*, 1999 ME 23, ¶ 6, 724 A.2d 610, 612. The entry of a summary judgment will be upheld "if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law." *Id.* A defendant is entitled to a summary judgment if the plaintiff bears the burden of proof on an essential element at trial and the state of the evidence is such that, if the plaintiff presented no more evidence, the defendant would be entitled to a judgment as a matter of law. *See June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 48 (Me.1996).

[¶ 9] Holland presses several claims of error challenging the entry of a summary judgment in his claims of constitutional and federal law violations, false imprisonment, intentional and negligent infliction of emotional distress, and malicious prosecution.[6] Holland specifically attacks the Superior Court's determination that Sebunya's actions at the Executive Committee meeting were authorized by the internal operating procedures of the Portland Branch, and that summary judgment would be proper on that ground.

## I.

[¶ 10] As to Holland's section 1983 and constitutional claims, whether or not Sebunya was authorized by the Portland Branch to have Holland removed is not necessarily dispositive of whether Sebunya had violated Holland's federal and state constitutional rights. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (allowing a section 1983 suit to proceed upon allegations that private restaurant had conspired with police to refuse to serve plaintiff because of plaintiff's race). What is fatal to his claims, however, is Holland's failure to

---

6. Holland has not properly challenged the grant of a summary judgment as to his 42 U.S.C. §§ 1985 & 1986 claims and his prima facie tort claim. He does not mention the sections 1985 and 1986 claims in his brief to this Court. The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue. *See Atlantic Acoustical & Insulation Co. v. Moreira*, 348 A.2d 263, 266 n.1 (Me. 1975); *Sard v. Sard*, 147 Me. 46, 59, 83 A.2d 286, 293 (1951); *JJ.W. Stephens Ltd. v. Maine Lumber Products Corp.*, 147 Me. 135, 137, 83 A.2d 925, 926(1951). Likewise, although Holland lists in his statement of issues a challenge to the grant of summary judgment as to his prima facie tort claim, the section of his brief ostensibly devoted to arguing that point contains only a restatement of the issue followed by a blank page. Even when an argument is mentioned in a "statement of points on appeal," it is nonetheless abandoned when it "was not briefed or argued." *See MacArthur v. Dead River Co.*, 312 A.2d 745, 746 (Me.1973).

show the state action required to prevail on these counts.

[¶ 11] In order to "state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution ... and that the alleged deprivation was committed under color of state law." *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Private action, "no matter how discriminatory or wrongful," may not be reached through section 1983. *Id.* The same is true of claims brought directly under the Constitution; "most rights secured by the Constitution are protected only against infringement by governments."[7] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *United Bhd. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

[¶ 12] Holland, however, has not provided sufficient evidence to establish the state action necessary to justify a recovery under section 1983. The United States Supreme Court has established a two-part analysis for evaluating whether the requisite state action is present:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be the state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. at 937, 102 S.Ct. 2744.

[¶ 13] Sebunya asserts in his statement of material facts submitted in support of his motion for a summary judgment that on the night of February 13, 1995, he was not acting in his capacity as Cultural Affairs Coordinator for the City of Portland. Holland's Rule 7(d)(2) statement submitted in opposition to the motion for a summary judgment does not refute that assertion. Holland meely recites that Sebunya at the time was an employee of the police department, a fact that is not disputed. *See Saucier v. State Tax Assessor*, 2000 ME 8, ¶ 5, 745 A.2d 972, 974 (holding that a party opposing summary judgment must specifically rebut the movant's statement of material facts); *see also Prescott v. State Tax Assessor*, 1999 ME 250, ¶ 6, 721 A.2d 169, 172 (deciding that a failure to specifically rebut movant's statement of material facts means those facts are admitted). Moreover, Holland's statement, at most, only satisfies the first of the Lugar requirements.

[¶ 14] In order to satisfy the second of these requirements and show state action, Holland must demonstrate more than Sebunya's status as a state official. The employment status of a State or city official is not enough to transform personal pursuits into state action. *See Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.1995)[8] (noting that the challenged activities must "relate[ ] in some meaningful way either to the [state official's] governmental status or to the performance of his

---

**7.** The only rights that have been specifically recognized as protected against private enforcement are "the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel...." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277, 113 S.Ct. 753 (1993).

**8.** In *Martinez*, there was no state action when an on duty uniformed police officer was "bent on a singularly personal frolic: tormenting an acquaintance." *Id.* at 987.

duties" to be chargeable as state action). The relevant question in determining whether the second requirement of *Lugar* is met is whether "the actions complained of were committed while the defendants were purporting to act under the authority vested in them by the state, or were otherwise made possible because of the privileges of employment." *Hughes v. Halifax County Sch. Bd.*, 855 F.2d 183, 186–87 (4th Cir.1988).[9] Thus, an off-duty police officer who does not act in accord with police regulations or invoke the authority of the police department acts as a private citizen when he commits the alleged violation of right. *See Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir.1997) (holding off-duty officer who sexually assaulted fourteen year old girl at his ranch was "neither actually acting in his official capacity or exercising responsibilities pursuant to state law, nor purporting to so act" even though he had met the girl while assigned to the school district and used his employment status to secure her parents' permission to travel with him to his ranch); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th cir. 1996); *Pitchell v. Callan*, 13 F.3d 545, 548 (2nd Cir.1994).

[¶ 15] Holland's evidence does not indicate that Sebunya's ejection of Holland was accomplished because of "the privileges of [his] employment" with the Portland Police Department. The police response to Sebunya's complaint was no more vigorous than would be given to any private citizen requesting assistance in removing an allegedly disruptive person from a meeting of a private organization: Sebunya had to call for assistance; the officers did not immediately arrive at the meeting as they might have done if they were standing by for Sebunya's call; and, though the officers did not challenge Sebunya's authority to eject Holland, the officers arrested Holland only after he refused their requests to leave voluntarily. Moreover, there is no indication in the 7(d) statements that Sebunya had Holland ejected at the request of Police Chief Chitwood or any other police or city employee.[10]

[¶ 16] In arguing against the court's grant of summary judgment and to support a contention that Sebunya must have acted in concert with the Portland police in silencing Holland, Holland relies on what he asserts is Sebunya's refusal to take any action to oppose Chief Chitwood. Although the evidence does support the assertion that Sebunya would do nothing to oppose Chief Chitwood, there is no evidence that Chitwood did anything other than to admonish Sebunya himself not to advocate for Ms. Wright. The record does not reflect any attempt by Chitwood to influence Sebunya to take action to prevent others from pursuing the police brutality claim of Ms. Wright. To the contrary, Holland's evidence suggests Sebunya was motivated by extreme personal animosity against Holland. Holland's assertion that Sebunya was engaged in a conspiracy with the Portland police to silence Holland is highly speculative and not supported by the evidence; such a claim cannot survive the motion for a summary judgment. *See Webb v. Haas*, 1999 ME 74, ¶¶ 14, 15, 728 A.2d 1261, 1267 (holding that to survive summary judgment, evidence supporting cause of action must be more than speculative or conjunctural).

## II.

[¶ 17] Holland contends that Sebunya acted outside his authority and

---

9. In *Hughes,* two county employees had assaulted the plaintiff in retaliation for the plaintiff's testimony before a grand jury regarding the alleged corruption of the state division that employed the employees and the plaintiff. *See id.* at 184. Though the assault occurred at the work site, the Fourth Circuit refused to find that the employees were state actors because there was no indication that they had used the authority of their positions to assist them in assaulting the plaintiff. *See id.* at 187.

10. The 7(d) statements indicated that Chitwood wished to limit Sebunya's advocacy on this point, possibly out of a desire to prevent a challenge to the police by a police employee.

that, accordingly, his claims for false imprisonment and intentional and negligent infliction ofemotional distress should be allowed to proceed to trial. We disagree. Even if Holland were correct in his claim that Sebunya had exceeded his authority, Holland has failed to present sufficient evidence to allow recovery. In order to recover for the intentional infliction of emotional distress, the conduct underlying the claim must be "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community...." *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me.1979). Taking the facts in the light most favorable to Holland, Sebunya called the police and had Holland removed from the meeting over which Sebunya was presiding. Even if Holland were correct and Sebunya lacked justification for the removal, Sebunya's actions do not "exceed all possible bounds of decency."

[¶ 18] Moreover, Holland has not demonstrated sufficiently severe emotional distress to allow recover under theories of intentional or negligent infliction of emotional distress. Those torts require proof of severe emotional distress. *See Fuller v. Central Maine Power Co.*, 598 A.2d 457, 459 (Me.1991). "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 11, 722 A.2d 1269, 1272. Even if the distress that Holland claims he suffered was, in actuality, severe, he still must show that "the harm alleged reasonably could have been expected to befall the ordinarily sensitive person." *Theriault v. Swan*, 558 A.2d 369, 372 (Me.1989). Although most people would experience distress at being removed from a public meeting, it cannot be said that the "ordinarily sensitive person" would "be unable to adequately cope with

the mental stress engendered" by that removal.

[¶ 19] Finally, in the absence of a showing that Sebunya engaged in a conspiracy with the police, Sebunya's only liability would be for false imprisonment as a private party who caused Holland's arrest. If Sebunya had placed the matter before a magistrate and thereby caused a warrant to issue, he would not be liable for the resulting arrest of Holland, even if the warrant were later deemed improper. *See Rush v. Buckley*, 100 Me. 322, 326–27, 61 A. 774, 776 (1905). Assisting a law enforcement officer in making an arrest or otherwise instigating the officer to enforce a warrant can expose the private citizen to liability. *See id.*; *Vinton v. Weaver*, 41 Me. 430 (1856). Liability, however, generally would require some action on the part of Sebunya, such as physically assisting the officer. *See Vinton*, 41 Me. at 431–32. The distinction is between those who attempt to invoke the legal process as opposed to those who seek to interpose themselves in conflict; although the former can be liable for malicious prosecution where they abuse the legal process, they are not liable for false imprisonment. William L. Prosser, Handbook of the Law of Torts § 11, at 49 (4th ed.1971). In calling the police for assistance in removing Holland from the meeting, Sebunya invoked the legal process. Sebunya did not attempt to remove Holland on his own. Even if his actions in resorting to police help were without justification, Sebunya cannot be liable to Holland for false imprisonment. *Cf. Mavromatis v. United Greek Shipowners Corp.*, 179 F.2d 310 (1st Cir.1949) (holding that master of ship was not liable for false arrest when he asked police to remove discharged employees from ship).

## III.

[¶ 20] In order for Holland to prevail on his claim for malicious prosecution, he must show that the criminal trespass complaint brought against him by Sebunya was "(1) instituted [or continued]

against [him] without probable cause, (2) with malice, and (3) that [he] received a favorable termination of the proceedings." *Gray v. State*, 624 A.2d 479, 483 (Me.1993) (alterations in original); *Davis v. Currier*, 1997 ME 199, ¶ 4, 704 A.2d 1207, 1208. Holland contends that Sebunya lacked probable cause to order the police to remove him from the meeting. Probable cause is an objective standard that requires Holland to show that Sebunya lacked reasonable grounds to believe Holland was guilty of criminal trespass. "Reasonable grounds are grounds sufficient to justify a man who was calm, and not governed by passion, prejudice or want of ordinary caution and care, in believing the party guilty." *Price v. Patterson*, 606 A.2d 783, 785 (Me.1992).

[¶ 21] The Executive Committee meeting was a public meeting with no apparent restrictions upon attendance. Holland therefore did not trespass when he first arrived at the meeting. *See State v. Armen*, 537 A.2d 1143, 1146 (Me.1988). Holland's arrest was instead under 17–A M.R.S.A. § 402(1)(D), which applies to those who "[r]emain[ ] in any place in defiance of a lawful order to leave that was personally communicated to that person by the owner or another authorized person." 17–A M.R.S.A. § 402(1) (Supp.1999). Holland's dispute centers upon whether Sebunya's order to leave was "lawful." "An order to leave property open to the public is lawful only when an authorized person has some justification for requesting removal." *Armen*, 537 A.2d at 1145. Holland's argument is that Sebunya lacked justification because Sebunya's order to leave exceeded the authority granted him by Robert's Rules of Order.

[¶ 22] Even though the meeting was open to the public, Sebunya did not lack justification for ordering Holland, a nonmember, removed. Under Robert's Rules of Order Sebunya has discretion to have a nonmember removed from the meeting:

> Nonmembers ... can be excluded at any time from part or all of a meeting of a society, or from all of its meetings. Such exclusion can be effected by a ruling of the chair in cases of disorder, or by the adoption of a rule on the subject, or by an appropriate motion as the need arises—a motion of the latter being a question of privilege.

Robert's Rules of Order § 60. The Rules give Sebunya the authority to act alone in this regard:

> An assembly has the right to protect itself from annoyance by nonmembers, and its full authority in this regard ... can be exercised by the chair acting alone. The chair has the power to require nonmembers to leave the hall, or to order their removal, at any time during the meeting....

Robert's Rules of Order § 60. Sebunya asked Holland why he was there and received no response. Given the persistent bad relations between the two men, it was not unreasonable for Sebunya to conclude that Holland intended to disrupt the meeting. The action to eject Holland was therefore within Sebunya's discretion as President of the Portland Branch.

[¶ 23] Because Holland has abandoned his other claims of error, we decline to discuss them. *See MacArthur v. Dead River Co.*, 312 A.2d 745, 746 (Me.1973).

The entry is:

Judgment affirmed.

DANA, J., with whom, ALEXANDER, J., joins, dissenting.

[¶ 24] Although I concur with sections II and III of the Court's opinion, I do not agree with section I because I believe the trial court erred in granting a summary judgment on Holland's claim against Sebunya brought pursuant to 42 U.S.C.A. § 1983 alleging a deprivation of his First Amendment right to free expression. Holland has generated a genuine issue of material fact regarding whether Sebunya's act of preventing him from speaking at the

Executive Committee meeting constituted state action.

[¶ 25] This Court has stated that a summary judgment is a remedy that courts should invoke with caution, *see Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993), and, "[a]s an extreme remedy, a summary judgment should be granted in favor of the defendant 'only when the facts before the court so conclusively preclude. recovery by the plaintiff that a judgment in favor of the defendant is the only possible result as a matter of law,'" *Glynn v. Atlantic Seaboard Corp.*, 1999 ME 53, ¶ 8, 728 A.2d 117, 119 (quoting *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 901 (Me.1996)) (emphasis added). Furthermore, when reviewing a summary judgment, this Court views the evidence in the light most favorable to the non-moving party "and accord[s] that party the full benefit of all favorable inferences that may be drawn from the evidence," *Hughes v. Beta Upsilon Bldg. Ass'n*, 619 A.2d 525, 526 (Me. 1993). I believe Holland's claim against Sebunya individually withstands summary judgment analysis.

[¶ 26] As the Court's opinion correctly notes, whether the President of the Portland Chapter of the NAACP has the authority pursuant to Robert's Rules of Order to remove a member of the general public from a meeting of the Executive Committee does not resolve whether, as a matter of law, Holland has a valid section 1983 claim against Sebunya. Whether a private individual may otherwise legally remove a person from private property, or engage in similar private conduct, does not alter the fact that the individual may nevertheless be liable pursuant to section 1983 if he or she conspires with the state to do so in order to deprive the person of a

constitutional right. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are actig 'under color' of law for purposes of § 1983 actions."); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (holding that plaintiff in that case would be entitled to relief from a private actor pursuant to section 1983 if she could demonstrate that the actor and a policeman "somehow reached an understanding" to discriminate against her on the basis of her race or the race of her companions), cited supra. Additionally, if Sebunya, acting in his capacity as an employee of the Portland Police Department, contrived to prevent Holland from speaking at the meeting about the Wright police brutality matter, Holland would have a valid claim pursuant to section 1983.[11] *See West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (noting that state employment is generally sufficient to render a defendant a state actor and that a defendant acts under color of state law for purposes of section 1983 when the state employee "abuses the position given to him by the State" so as to deprive an individual of a constitutional right); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed.") (citations omitted).

[¶ 27] Holland brought a complaint against Sebunya, among others, in which he alleged, "Defendant Sebunya was at all times relevant to this Complaint an employee of the City of Portland, Maine, Police Department as its cultural affairs

---

11. The Court's opinion notes that Holland "does not dispute that, at the time of the expulsion, Sebunya was *not* acting in his capacity as an employee of the Portland Police Department and was therefore a private actor." (Emphasis added.) The record, however, does not appear to clearly support this

proposition as will be discussed in more detail below. As a general matter, the essence of Holland's claim against Sebunya is that Sebunya prevented him from speaking at the Executive Committee meeting *because* of his position as an employee of the Portland Police Department.

coordinator. Defendant was at all times relevant to this Complaint acting under color of state law." (Plaintiff's Complaint 4) [hereinafter Pl. C.——]. He then later alleges that Sebunya prevented him from presenting a matter of concern to the Executive Committee. (Pl. C. 8.) The complaint goes on to specifically allege the following in "Count I" with respect to his claims against the various defendants:

28. Defendants, acting under color of state law, deprived Plaintiff of the rights, privileges and immunities secured to him by the Constitution and laws of the United States. More specifically, the facts set forth in Paragraphs 4 through 27 above constitute a denial to Plaintiff of his rights secured under the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution.

29. Plaintiff alleges that in the doing of the acts and things complained of above, Defendants were conspirators who acted willfully and wantonly and who were engaged in a scheme designed and intended to deprive Plaintiff of his rights guaranteed to him under the Constitution of the United States and under 42 U.S.C. §§ 1343[sic], 1983, 1985, 1986, and entitling Plaintiff to an award of attorneys' fees under 4[2] U.S.C. § 1988.

30. Plaintiff alleges that as a direct and proximate result of Defendants' acts complained of above Plaintiff was denied his right to freedom of speech and freedom of association, deprived of his liberty, and deprived of his right to due process and equal protection of the laws. (Pl. C. 9–10.)

[¶ 28] Viewing the facts found in the parties' Rule 7(d) statements that are supported by citations to the record in the light most favorable to Holland, the record establishes the following in support of his section 1983 claim against Sebunya for a deprivation of his right to free speech: An elderly black woman named Candy Wright felt that she had been the victim of police brutality. (Plaintiff's Rule 7(d) Statement 1) [hereinafter Pl. 7(d)——]. Holland, although not a member of the Portland Branch of the NAACP, served as court liaison for the group and had been asked to look into the matter on behalf of the Portland Branch. (Pl.7(d) 1–2.) Sebunya at the time was both employed by the Portland Police Department and served as the President of the Portland Branch of the NAACP. (Pl.7(d) 2.)

[¶ 29] Shortly before the Executive Committee meeting in question, Holland confronted Sebunya about his failure t advocate on behalf of Wright and about allegations that Sebunya had been directed by the Chief of the Portland Police to keep the Wright matter quiet. (Pl.7(d) 2.) Sebunya responded that he was not going to contradict the orders of the Chief or put his position with the police department in jeopardy. (Pl.7(d) 2.) He told Holland he should take his complaints to the Executive Committee. (Pl.7(d) 3.) Holland indicated that he would attend the next meeting if that was what was necessary. (Pl.7(d) 3.)

[¶ 30] Meetings of the Executive Committee have historically been open to members of the public and members of the general public have been invited to participate in such meetings on occasion. (Pl.7(d) 3–4.) At the invitation of Gerald Talbot, a member of the Executive Committee, Holland attended the Committee meeting on February 13, 1995. (Pl.7(d) 3–4.) Holland was not disruptive or disorderly when he appeared at the meeting. (Pl.7(d) 4.)

[¶ 31] Before the meeting had been called to order, Sebunya ordered Holland to leave the meeting and threatened to call the police if he did not.[12] (Pl.7(d) 4.) He

---

12. The defendants state in their Rule 7(d)    statement of facts, "At no time on the evening

did so in order to prevent Holland from addressing the Executive Committee and bringing the issues in the Wright matter, including Sebunya's compliance with the Chief of Police's order to keep the matter quiet, to its attention. (Pl.7(d) 4.) When Holland did not leave, Sebunya called the police to come and remove Holland from the meeting. (Pl.7(d) 4.) When the officers arrived, they told Holland that if he did not leave, he would be arrested. (Defendants' Rule 7(d) Statement 4) [hereinafter D. 7(d)—]. The officers subsequently arrested Holland. (D.7(d) 4.)

[¶ 32] Sebunya has failed to demonstrate that there is no genuine issue of material fact. *See Cyr v. Adamar Associates Ltd. Partnership*, 2000 ME 110, ¶ 4, 752 A.2d 603, 604 ("We will affirm the grant of a summary · judgment if, upon an independent review of the record, the evidence manifests that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."). Furthermore, a factfinder, without exceeding the bounds of reasonableness, could conclude from the above facts that Holland was deprived of his First Amendment right to free speech by virtue either of Sebunya's acts in his capacity as a police department employee or in conspiracy with a member of the Portland Police De-

partment.[13] *Cf. Thibodeau v. Cole*, 1999 ME 150, ¶ 6, 740 A.2d 40, 42 (when nonmoving party bears the burden of proof at trial, party must produce enough evidence to withstand a motion for a directed verdict in order to avoid summary judgment); *Jones v. Route 4 Truck & Auto Repair*, 634 A.2d 1306, 1309 (Me.1993) (a directed verdict is appropriate where no reasonable view of the evidence could sustain a contrary verdict).

[¶ 33] More specifically, a factfinder could reasonably conclude from the facts and the inferences to be drawn from them that, until Sebunya ordered him to leave the Executive Committee meeting, Holland was at a meeting of a private organization that he was otherwise permitted to attend and at which he was permitted to speak, as long as he adhered to the organization's procedures for doing so. Sebunya ordered Holland to leave the meeting, not because he was disorderly or otherwise violating the organization's rules of procedure, but because Sebunya sought to prevent him from expressing views and conveying information about a police brutality matter. Sebunya was doing so at the behest of the Chief of Police who told him to suppress discussion of the matter. *Cf. Adickes*, 398 U.S. at 151, 90 S.Ct. 1598 ("The involvement of a state official in such a

---

of February 13, 1995 was Mr. Sebunya acting in his capacity as Cultural Affairs Coordinator." (Defendants' Rule 7(d) Statement 4.) While this may be true (certainly trying to suppress discussion of a police brutality incident involving a minority would not fall within his duties as Cultural Affairs Coordinator), it isnot necessarily helpful in the analysis of whether Sebunya's actions constituted acts under the color of state law for purposes of a § 1983 claim. Rather the necessary determination is whether he was acting as an agent of the state or in conspiracy with one of its agents. Nowhere in his Rule 7(d) statement does Sebunya state that he was not acting as an agent of the police department or in conspiracy with an agent of the police department.

13. While merely being an employee of the state may not be enough to constitute action under color of state law, acting at the di-

rection of a supervisor arguably is, *cf. Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir.1996) (noting that, in assaulting and attempting to rob plaintiffs, police officer was not acting "pursuant to any government or police goal" and ultimately concluding he was not acting under color of state law) (emphasis added), and, as noted above, even private individuals may be liable pursuant to section 1983 for otherwise private conduct if they engage in it in the course of a conspiracy with a state actor to deprive an individual of a constitutionally protected right. Sebunya's Rule 7(d) statement does not address these issues at all. Furthermore, assuming Sebunya's act of removing Holland from the meeting was based purely on private motivation in order to conclude that he was not acting under color of state law for purposes of section 1983 is begging the question, for that is the very material fact that is in dispute.

conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized or lawful."); *see also Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir.1997) (stating in context of section 1983 action against private individuals, "[b]ecause the Plaintiffs are required to establish state action for purposes of their constitutional claims, we treat the color-of-state-law requirement and the state-action requirement as equivalent"); *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir.1996) ("In § 1983 actions, 'color of state law' is synonymous with state action."). When Holland refused to leave, Sebunya had him arrested and forcibly removed from the meeting.

[¶ 34] As for Sebunya's act being motivated by a personal animosity toward Holland, Sebunya's Rule 7(d) statement in no way refers to the personal relationship between Holland and Sebunya. Furthermore, the only reference to their relationship that appears in ·Holland' Rule 7(d) statement simply refers to Holland's attitude toward Sebunya and makes no reference to Sebunya's feelings toward Holland:

27. Mr. Sebunya had engaged in a casual sexual relationship with the woman who later became Mr. Holland's wife and, once she became pregnant with Mr. Sebunya's child, he failed to support her either emotionally or financially.

28. Mr. Holland had previously confronted Mr. Sebunya with his opinion that Mr. Sebunya was "a complete fraud and charlatan and that he was a dishonorable man" because Mr. Sebunya's failure to perform responsibilities which Mr. Holland contended M. Sebunya owed to the woman who later became Mr. Holland's·wife.

Confining our review to the parties' Rule 7(d) statements in fact reveals that Sebunya's only explanation for his removal of Holland from the meeting is that Holland refused to respond to his questions about why he was there. Determining whether Sebunya's explanation is more plausible, and necessarily whether Sebunya is credible, is for a factfinder and is not this Court's proper function when simply reviewing a summary judgment.

[¶ 35] Viewing the facts in the light most favorable to Holland conjures just the sort of scenario that section 1983 actions seek to prevent: the government, through its agents or in conspiracy with private individuals, seeking to prevent or punish a citizen for otherwise lawful speech of which it disapproves. *See, e.g., Helvey v. City of Maplewood*, 154 F.3d 841 (8th Cir. 1998) (holding that trial court erred by granting a summary judgment on a former bartender's section 1983 claim against the police alleging that they conspired with her employer, a private party, to have her fired because of her testimony in a civil rights proceeding involving the officers, thereby depriving her of her First Amendment right to free speech). Because there is a genuine issue of material fact regarding why and in what capacity Sebunya ejected Holland from the Executive Committee meeting, I would vacate the summary judgment with respect to Holland's section 1983 claim against Sebunya for depriving him of his First Amendment right to free speech.