TDW - CUM - 7/28/2010

STATE OF MAINE
Cumberland, ss. Clerk's Office

Cyr v. Board of Licensing of Auctioneers, AP-09-45 and AP-10-1, (Superior Ct. Cumberland)

Before the court are appeals by James Cyr from two orders of the Maine Board of Licensing of Auctioneers. The first order, issued on November 16, 2009 after a hearing on October 7, 2009, imposed civil penalties totaling $15,000 and assessed costs of $1,533.13. The second order, issued on December 2, 2009 after a hearing on November 16, 2009, imposed another $15,000 in civil penalties and assessed costs of $1215.63.

Cyr makes the same challenges to both orders. He contends that the Board lacked authority to sanction him and impose fines because his auctioneer's license had already been revoked for unrelated violations. He also contends that the Board improperly failed to consider his ability to pay before imposing the fines and costs in question.[1]

Administrative decisions are subject to reversal under Rule 80C and 5 M.R.S. § 11007 if those decisions are in violation of constitutional or statutory provisions, in excess of statutory authority, made upon unlawful procedure, affected by bias or error law, unsupported by substantial evidence, or are arbitrary or capricious or characterized by an abuse of discretion. In this case Cyr is not arguing that there is an absence of substantial evidence but rather is pressing legal arguments – that the Board had no authority to impose discipline on him after his license was revoked and that the Board was required to consider his ability to pay.

With respect to Cyr's first argument, the record establishes that after a number of violations, Cyr entered into a consent agreement with the Board on May 20, 2008 in which he agreed to a one-year license suspension effective June 19, 2008 with an additional condition that during the suspension period he notify any potential consignors of the suspension. On December 3, 2008 Cyr's license was revoked for other violations including his retention of a rug worth approximately $125,000 that belonged to a consignor. As a result, the actual period of Cyr's license suspension lasted from June 19, 2008 to December 3, 2008.

All but two of violations that formed the basis for the Board's November 16, 2009 and December 2, 2009 orders occurred during the period when Cyr's license was suspended and before it was revoked. See December 2, 2009 order (R. in AP-10-1, Tab B) at 2-7; November 16, 2009 order (R. in AP-09-45, Tab B) at 2-7. Two of the violations (pertaining to certain Haffenreffer contracts) took place after Cyr's license had been revoked. See November 16, 2009 order at 5-6. The majority of the violations involved consignment contracts entered into by Cyr even though his license had been suspended, and the Board found that in no instance did Cyr disclose the suspension of his license as required by the May 20, 2008 consent agreement.

Simply stated, Cyr's first argument is that the governing statute authorizes the Board to impose discipline only on a "licensee or applicant for licensure," 10 M.R.S.A. §

---

[1] Cyr initially raised an additional argument – that the Board does not have authority to assess multiple fines for the same conduct – but has abandoned that argument by failing to argue the point in his brief on appeal. E.g., Holland v. Sebunya, 2000 ME 160 ¶ 9, 759 A.2d 205, 209.

8003(5-A)(B), and that at the time these orders were entered he was no longer a licensee because of the revocation. The problem with this argument is that it is equally possible to interpret § 8003(5-A)(B) as authorizing discipline against anyone who, at the time of the violations, was a licensee or applicant for licensure.

The latter interpretation is strongly supported by 10 M.R.S. § 8003(5-A)(A)(7), which provides in pertinent part that a Board may suspend or revoke a license and impose other discipline as authorized for

> (7) Continuing to act in a capacity requiring a license . . . after expiration, suspension, or revocation of that license.

(emphasis added). If discipline can be imposed for engaging in activity requiring a license after that license has been revoked, it follows that discipline can also be imposed after revocation for actions undertaken in violation of a license suspension.

Further support for the imposition of disciplinary sanctions in this case can be found in Golz v. Maine Real Estate Commission, 634 A.2d 1288, 1289 (Me. 1993), in which the Law Court noted that "the disciplinary authority of occupational and professional licensing boards is limited to licensees and former licensees" (emphasis added). See also Wood v. Superintendent of Insurance, 638 A.2d 67 (Me. 1994).

Cyr's second argument is entitled to a little more traction. Cyr argues that in each case the Board was required to consider his ability to pay before assessing $15,000 in civil penalties in each case and that it gave no consideration to that subject. Counsel for the Board acknowledges that under Zegel v. Board of Social Worker Licensure, 2004 ME 31 ¶ 19, 843 A.2d 18, 23, ability to pay is a relevant consideration with respect to the costs that were assessed. However, counsel for the Board contends that that issue is now moot because Cyr's bankruptcy filing will prevent the Board from recovering costs in any event.

As to the civil penalties, which the parties agree are unaffected by the bankruptcy, the Board contends that ability to pay is not relevant under Zegel.

The court disagrees that ability to pay is not a relevant factor to the imposition of fines or civil penalties.[2] In the court's view, the logic of the Zegel case and the fact that ability to pay is generally considered to be relevant to the imposition of monetary sanctions, see, e.g., 17-A M.R.S. § 1302(1), suggests that ability to pay is a relevant factor.

The conclusion that ability to pay is a valid consideration with respect to the imposition of fines or civil penalties, however, is not the end of the analysis. The remaining question is whether the Board has an independent obligation to inquire into a respondent's ability to pay or whether it only needs to offer a respondent an opportunity to raise that issue.

---

[2] In the Board's orders, in the record below, and in the briefs filed by the parties, the amounts assessed against Cyr are referred to as "fines." The statute refers to "civil penalties." 10 M.R.S. § 8003(5-A)(B)(5). Whether the amounts in question are called fines or civil penalties is of no legal significance.

2

In AP-09-45, Cyr was present when counsel for the prosecution made his closing argument at the hearing. In that argument, counsel expressly requested that the maximum fine of $ 1,500 be assessed against Cyr for each and every violation found and that Cyr and the other two respondents[3] be jointly and severally assessed with the hearing costs. AP-09-45 Tr. 264. The record also reflects that all three respondents were given an opportunity to respond to the prosecuting attorney's closing arguments. Id. 265. Although the other two respondents took the opportunity to address the Board at that time, Cyr did not. Id. 265-70. Almost immediately thereafter Cyr left the hearing, before deliberations began. Id. 271.

At the hearing in AP-10-1, Cyr did not attend but his counsel, William Fogel, was present. In that case the prosecuting attorney did not make a specific recommendation as to the amount of civil penalties to be assessed, but it is evident from Mr. Fogel's brief remarks that the Board's November 16 order had been received prior to the hearing. See AP-10-1 Tr. 183-84. Specifically, Mr. Fogel referred to the fines that the Board had assessed in its November 16 order (which he stated he had received that day) and mentioned the possibility that a sanction in the form of a fine would be assessed in the second case as well. Id. Mr. Fogel then discussed whether recourse might be had to certain bonds to pay consignors who had never received their money, but he never raised the issue of Cyr's ability to pay any fines that might be assessed.

At both hearings Cyr or his counsel had the ability to request the Board to consider Cyr's ability to pay. In AP-09-45, Cyr was present at the hearing when the prosecuting attorney was asking for a $ 1,500 penalty on each violation. Cyr had the opportunity to raise inability to pay as an issue but did not do so. In AP-10-1 Cyr's counsel knew that the Board has just issued an order assessing 10 penalties of $1,500 each and acknowledged that sanctions in the form of fines were also possible with respect to the second group of alleged violation. Tr. 183-84. Once again, the issue of Cyr's ability to pay was not raised.

The court concludes that while ability to pay is a relevant consideration, it is the respondent's obligation to raise the issue. Because Cyr had received notice as to the amount of penalties that might be assessed and had been given an opportunity to raise ability to pay as an issue, the Board in these cases committed no error by failing to consider ability to pay during its deliberations.

This conclusion follows from recognition that any relevant information with respect to ability or inability to pay is almost always in the possession of the respondent, not in the possession of the Board. Indeed, in other contexts where statutes expressly require consideration of the ability to pay, the party against whom a monetary penalty is imposed is expressly assigned the burden of proving inability to pay. See 17-A M.R.S. § 1302(2) (criminal fines), 17-A M.R.S. § 1325(4) (restitution).

---

[3] In the hearing that resulted in the November 16, 2009 order charges against Cyr were consolidated with charges against two other auctioneers alleged to have assisted Cyr in committing the violations.

The court recognizes that language in <u>Zegel</u> suggests that the Board in that case should not have imposed costs without making any inquiry into Zegel's ability to pay. 2004 ME 31 ¶ 19, 843 A.2d at 23. However, in <u>Zegel</u> the issue had at least been raised before the Board in a postjudgment motion.[4] In the court's view, <u>Zegel</u> did not address whether a Board is required to make inquiry into a respondent's ability to pay when (1) the respondent is aware of potential monetary sanctions, (2) the respondent has an opportunity to offer evidence and argument with respect to his or her financial circumstances, and (3) the respondent fails to raise the issue. So long as a reasonable opportunity to raise ability to pay has been afforded below, this issue cannot be raised for the first time on appeal.

The entry shall be:

The November 16, 2009 and December 2, 2009 orders of the Board of Licensing of Auctioneers with respect to James D. Cyr are affirmed. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July _28_ , 2010

Thomas D. Warren
Justice, Superior Court

---

[4] The court cannot discern from the <u>Zegel</u> decision whether ability to pay had also been raised at an earlier stage of the proceedings or whether there had been an opportunity to do so.

4

Date Filed 01-04-2010    CUMBERLAND    Docket No. AP-2010-01
                            County

Action    80C APPEAL


JAMES D. CYR                 STATE OF MAINE, BOARD OF LICENSING OF
                                        AUCTIONEERS

                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM A. FOGEL, ESQ.<br>PO BOX 1398<br>POTLAND, ME 04104 | ROBERT PERKINS AAG |

Date of
Entry

Date Filed __12-14-09__     CUMBERLAND     Docket No. __AP-09-45__

County

Action __80C Appeal__

James D. Cyr

State of Maine, Board of Licensing of
Auctioneers

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM A. FOGEL, ESQ.<br>COPE LAW FIRM<br>PO BOX 1398<br>PORTLAND, ME 04104 | Robert Perkins Esq |

Date of
Entry