ALBERT G. BLUNT et al. vs. ALICE GLEDHILL McCOOMBS, Admrx.

ALBERT G. BLUNT et al., in eq., vs. ALICE GLEDHILL McCOOMBS, Admrx.

Somerset. Opinion January 28, 1913.

*Accommodation. Accrued. Assignment. Agreement. Cause of Action. Creditors. Culpable Neglect. Equity. Liquidation. Promissory Note. Revised Statutes, Chap. 89, Section 21.*

1. The defendant's intestate, Edwin Gledhill, agreed in writing to save the plaintiff harmless, at the time the notes should become due, from all loss, cost and expense which should result to them on account of their signing with him and another as accommodation makers two promissory notes, on six months time on which the Marston Worsted Mills was the principal maker. Before the notes matured, in July and August, 1906, Mr. Gledhill died.

*Held:*

1. That the cause of action accrued to the plaintiffs at the time the notes were first renewed.
2. That in any event an action at law on the agreement to indemnify is barred by the special statute of limitations of suits against executors and administrators.
3. That a bill in equity under Revised Statute, Chapter 89, Section 21, cannot be maintained by a creditor whose claim has not been presented within the time limited by statute, unless it appears that justice and equity require it, and that such creditor is not chargeable with culpable neglect.
4. That the plaintiffs in the pending bill are chargeable with culpable neglect and that justice and equity do not require the bill to be sustained.

On report. In the action at law, judgment for the defendant. In the bill in equity, between the same parties, the bill is dismissed with costs.

The first case is to recover damages for breach of a contract of indemnity made by the defendant's intestate, in which he agreed to save the plaintiffs harmless from all loss, cost and damage resulting to them on account of their having signed certain notes. The defense is the special statute of limitations applicable to suits

against executors and administrators under Revised Statutes, Chapter 89, Section 14-15.

The second case is a bill in equity brought by the same plaintiffs to recover judgment on the same cause of action under Revised Statutes, Chapter 89, Section 21. The defense to this bill is that the plaintiffs are chargeable with culpable neglect and are not entitled to equitable relief.

The case is stated in the opinion.

*Gould & Lawrence,* for plaintiffs.

*Butler & Butler,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, KING, CORNISH, BIRD, HANSON, JJ.

SAVAGE, J. The first case is brought to recover damages for breach of a contract of indemnity made by the defendant's intestate, whereby he agreed to save the plaintiffs "harmless from all loss, cost and damage" resulting to them on account of their having signed certain notes. The defense is the special statute of limitations applicable to suits against executors and administrators. R. S., Chap. 89, Sects. 14, 17.

The second case is a bill in equity brought by the same plaintiffs to recover judgment on the same cause of action. It is brought under Section 21 of the same chapter, which provides that "if the Supreme Judicial Court, upon a bill in equity filed by a creditor whose claim has not been prosecuted within the time limited" by statute "is of opinion that justice and equity require it, and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person." The bill is brought only as an alternative remedy, to avail the plaintiffs, in case it is held that the action at law is barred by the statute of limitations. The defense is that the plaintiffs are chargeable with culpable neglect, and are not entitled to equitable relief. Both cases come up on report.

ACTION AT LAW.

On January 26, 1906, the defendant's intestate, Edwin Gledhill, agreed in writing to save the plaintiffs harmless from all loss, cost

and expense which should result to them on account of their sign-
ing with him and J. Wallace Blunt, son of one of the plaintiffs, a
note of even date with the agreement for $5000, and another note
for the same amount to be signed afterwards.  The latter note,
dated February 12, 1906, was afterwards signed by all the parties.
In both notes the Marston Worsted Mills, a corporation, was the
principal maker, and all the other signers were accommodation
endorsers.  Both notes were made payable to the Second National
Bank of Skowhegan, and each was made payable six months after
date.  The Second National Bank discounted the notes and the
Marston Worsted Mills had the proceeds.  On May 31, 1906, before
either of the notes had matured, Edwin Gledhill died.  When the
notes became due, they were renewed by the Worsted Mills, and
all the other signers, except Gledhill.  And they were successively
renewed in the same manner until 1910, the last notes maturing in
January and February of that year.  Beginning some time in 1907
or 1908, Roy L. Marston, representing a large stockholding interest
in the corporation, voluntarily signed the renewal notes.  During
this entire period, the Marston Worsted Mills was also indebted to
the First National Bank of Skowhegan for $10,000, on notes,
renewed from time to time, on which the plaintiffs and J. Wallace
Blunt voluntarily became accommodation endorsers in 1906, and
Marston afterwards.

Soon after the death of Mr. Gledhill, the defendant was appointed
administrator of his estate, gave notice thereof, and filed her affi-
davit of notice June 14, 1906.  Within eighteen months thereafter,
the plaintiffs filed in the probate office, under the provisions of
R. S., Chap. 89, Sect. 16, their demand, arising under the contract
of indemnity, alleging that the cause of action did not accrue within
said eighteen months.  The date of the writ is March 4, 1912.

Under the provisions of Revised Statutes, Chapter 89, Section
14, as amended by Laws of 1907, Chapter 186, "no action shall be
maintained against an executor or administrator on a claim or
demand against the estate," with certain exceptions stated, "unless
commenced within twenty months" after the affidavit of notice has
been filed in the probate court.  Only one of the exceptions touches
this case.  By Section 17 of Chapter 89, the time for bringing action
is extended in cases where a cause of action does not accrue within

eighteen months after affidavit of notice is filed. In such cases, when the claimant has filed his claim in the probate office within the eighteen months, and the heirs or devisees have given no bond to pay the claim, the claimant may bring an action within six months after his demand becomes due.

It being conceded that a cause of action has accrued upon the contract of indemnity, the question now to be considered is, when did it accrue? If it accrued within the eighteen months mentioned, then the action is barred by the general limitation of suits against administrators. If it accrued after the eighteen months, but more than six months before suit was commenced, it is likewise barred, under the exception. The plaintiffs claim that the cause of action accrued within six months before suit was commenced, and, therefore, that the action is not barred.

In order to understand the contentions of the parties, it is necessary to state the relations of the parties, and the history of the transactions subsequent to the giving of the contract for indemnity. Mr. Gledhill was the general manager of the Marston Worsted Mill. He was a large stockholder, holding 398 shares of the capital stock. He and his family and one Larzalaer of Philadelphia owned one-half of the capital stock. The other half belonged to the estate of Charles A. Marston, J. Wallace Blunt, and the plaintiffs, and perhaps others. At the time the original notes were given J. Wallace Blunt held the office of assistant treasurer. After the death of Mr. Gledhill, he was made the general manager, and the plaintiffs and J. Wallace Blunt, either constituted the whole board of directors, or were a majority of the board. They operated the mill until April, 1908, when, on a bill brought by creditors in the federal court, a receiver was appointed. The receiver continued the operation of the mill, until a reorganization was effected in 1910. In accordance with the plan of reorganization, a new corporation was formed, called the Marston Worsted Company. The creditors assigned their respective demands to a committee of creditors, as trustees. The committee purchased the property of the Marston Worsted Mills from the receiver, and conveyed it to the Marston Worsted Company. Preferred stock in the Marston Worsted Company was issued to the creditors on account of the claims so assigned by them, dollar for dollar. By the terms of the certifi-

cates, as well as by the plan of reorganization, the stock was pre-
ferred, both as to assets and dividends. The dividends were to be
cumulative at seven per cent per annum. The preferred stock
might be retired, in whole or in part upon any dividend date by
payment of one hundred dollars per share and accrued dividends to
any holder thereof. The preferred stockholders were to have the
sole voting power. Certain common stock was provided for, for
the benefit of former stockholders of the Marston Worsted Mill,
but it was not to be delivered to them until all the preferred stock
was retired. And until that time, the common stock was to have
no voting power, nor be entitled to dividends. By this scheme, the
creditors came into possession and control of the mill. They were
the owners, subject to the retirement or redemption of their shares
as provided. Whenever their shares should be so retired, the old
stockholders, by virtue of their common stock, would come into
possession and control.

The plaintiffs and J. Wallace Blunt and Roy L. Marston all
became parties to the reorganization. The First National Bank
and the Second National Bank had both proved their claims on the
Marston Worsted Mills notes in the receivership proceedings. In
January, 1910, the First National Bank assigned one-half of its
proved claim to the plaintiff, Blunt. Thereupon he assigned the
same to the committee of creditors. And on October 5, 1910, he
received the stipulated preferred stock in the Marston Worsted
Company. Similarly like assignments were made and preferred
stock issued, with respect to the remainder of the indebtedness due
to the banks. The First National Bank assigned the remainder of
its claim to the plaintiff Young, and the Second National Bank
assigned its claim, being renewals of notes on account of which the
contract of indemnity was given, one-half to J. Wallace Blunt, and
one-half to Roy L. Marston. At the time of the assignment, the
plaintiff Young and Roy L. Marston each paid the banks respec-
tively the amount due on account of the claim assigned. The plain-
tiff, Blunt, paid the whole amount due the banks on account of the
claims assigned to himself and to J. Wallace Blunt, his son. As
already stated, these four gentlemen were all endorsers on all the
notes held by both banks. And by mutual arrangement they took
the assignments and made the payments in the manner above

described. So that the fact that it happened that neither of the plaintiffs made payments specifically on account of the notes in the Second National Bank, for which the contract of indemnity was given, must be deemed of no importance in this action. In effect, they made the payments.

To this statement of the case, it is only necessary to add that the preferred stockholders operated the mill until February, 1912, when it became necessary to liquidate the affairs of the Marston Worsted Company. The mill was sold, and upon settling the business it was found that there were no proceeds whatever available for payment or distribution to the preferred stockholders. They had lost all.

The learned counsel for the plaintiffs suggests that four dates only are conceivable as those on some one of which this cause of action accrued; (a) the time the notes were first renewed; (b) the time of taking the assignments from the banks, and of the payments therefor; (c) the time of taking the preferred stock; and (d) the time of final liquidation of the new company without assets available for the preferred stock. It is conceded that if the cause of action accrued at any of the first three named dates, this action is barred by limitation, but the plaintiffs contend that no cause of action accrued at any of these dates, but did at the time of final liquidation.

As to the first date, that of the first renewals of the notes, counsel says that no cause of action accrued then, "because plaintiffs' only liability was a contingent one, and they had suffered no actual damage; that in order to have a cause of action for substantial damages they must either have paid or absolutely assumed the debt." We do not think this argument reaches the correct result. The rule is correctly stated in *Manning* v. *Perkins,* 86 Maine, 419, in these words,—"If the action rests on a breach of contract, it accrues as soon as the contract is broken, although no injury results from the breach until afterwards."

Now what was the contract? and how was it broken? The contract was to "save harmless" on account of the signing of the notes. It contained this clause,—"If said notes are paid by the said Marston Worsted Mills, or said Edwin Gledhill, at the time the same may become due and payable, then this agreement shall become

void, otherwise the said agreement shall remain in force." Nothing is said about renewals. The contract looked to the plaintiff's being saved harmless *at the time the notes should become due.* It was the contract duty of Mr. Gledhill to save them harmless then, by paying or otherwise taking care of the notes. Did he do so? We think he did not. We do not need to decide what would have been the result if Mr. Gledhill had lived and had signed the renewal notes with the plaintiffs. There might be such circumstances as would indicate an intention to waive any cause of action which might have accrued by reason of his failure to take care of the notes then. And in such a case, as shown by the authorities cited by the plaintiff, the indemnity contract would apply to notes given in renewal. *Pond* v. *Clarke,* 14 Conn., 339; *Boswell* v. *Greene,* 31 Conn., 74. But even if, as claimed by the plaintiffs, despite the terms of the contract, the loan was intended as a permanent one, which necessarily contemplated renewals, it is quite clear that it must have contemplated also renewals by Mr. Gledhill as well as by the others. But when the first notes became due, Mr. Gledhill was dead, and could not renew. The notes could not be renewed so to continue the same relative liability on the new notes as existed on the old ones. The notes became due. The plaintiffs might have paid them, in which case there is no doubt a cause of action on the indemnity contract would have accrued then. Instead, they signed new notes, without Gledhill, as co-surety. This changed the situation. They were then two sureties out of three, instead of two out of four. Their liabilities, as among themselves, were increased. Their proportionate rights as against one another as co-sureties were changed. We think it hardly admits of question that under the terms of this contract, and under these circumstances, a cause of action accrued to the plaintiffs on the failure of Mr. Gledhill to save them harmless, by taking care of the notes "at the time they became due." He had not saved them harmless.

But if this conclusion be not tenable, it is quite certain that a cause of action accrued in January, 1910, when the plaintiffs took up the notes by paying the banks the amounts due. The plaintiffs contend that the payment did not create a cause of action, because it was not the result of the liability against which they were indemnified. They claim that instead of being money paid by reason of

that liability, it was money spent in an effort to rehabilitate the principal debtor, so that it could pay its own debts, and thus prevent ultimate damage to endorser and indemnitor both, that the obligations of the notes were kept alive, in changed forms,—finally in preferred stock,—that they were and continued to be creditors even after taking the stock, that the original debt was not paid or discharged by them, and therefore that no cause of action then accrued. The plaintiff cites *Norton* v. *Soule,* 2 Maine, 345; *Howe* v. *Ward,* 4 Maine, 202; *McClellan* v. *Crofton,* 6 Maine, 334; *Young* v. *Jones,* 64 Maine, 559; *Ticonic Bank* v. *Bagley,* 68 Maine, 249; 32 Cyc., 280, and other authorities. We think none are in point. Some of them concern the reciprocal rights and liabilities of co-sureties, and some relate to the question what is to be regarded as a discharge or payment of a debt, or the effect of payment by surety upon his right of subrogation to security held by the creditor, but none to an express contract of indemnity. We find none that sustains plaintiff's position.

We think the renewal notes were paid or discharged by the plaintiffs in such sense as to be a breach of the contract to save harmless, for it is not denied that payment of the renewal notes would create a cause of action upon the contract of indemnity. This was the situation. The principal maker was unable to pay. Its property was in custodia legis. The plaintiffs were compellable to pay. They did pay. They took up the notes. The obligation to the bank was paid and discharged. They thereby became creditors of the Worsted Mills. True, they took assignments from the bank, and themselves assigned to the committee of creditors. These were steps in the proposed plan to establish their status as creditors, and entitle them to preferred stock. It may be conceded that from that time to the end they continued to be creditors of the principal maker. So would they have been if they had simply paid the notes, and taken no further steps. The preferred stock may be regarded as simply representing the obligation in another form. No doubt the steps taken by them were proper ones. Though the liability of the indemnity had become fixed, they might properly seek to save themselves and to save the Gledhill estate by such steps as might in the end enable them to reimburse themselves out of the assets of the Worsted Mill.

And it must be remembered that the question now is not what amount of damages they might have recovered, if they had sued seasonably. That question, and the further question whether if the estate of the indemnitor had paid them it would have been entitled to subrogation to their rights in the preferred stock, have not arisen. The question now is, did a cause of action accrue to them upon payment of the money to the bank? We think it did. We think that when the indemnitor, or rather his estate, instead of taking care of the notes, left the plaintiffs to pay them, and seek to retrieve themselves out of the uncertain fortunes of the Worsted Mill business, it did not "save them harmless from all loss, cost and damage," as Mr. Gledhill had agreed to do. We hold accordingly that the action is barred by limitation.

*Judgment for defendant.*

BILL IN EQUITY.

Necessarily many of the facts which are pertinent to a determination of the bill in equity have already been stated and discussed in our consideration of the action at law, and need not be repeated.

To sustain the bill, it is incumbent on the plaintiffs to show two things; first that justice and equity require it, and secondly, that they are not chargeable with culpable neglect. We think they have failed on both points.

When Mr. Gledhill died, and when the first notes became due, the Marston Worsted Mill was a going concern. So far as the case shows, though short of cash, it was solvent as to creditors. That year J. Wallace Blunt purchased the Larzalaer stock at par. It is in evidence that the plaintiffs considered the stock worth seventy-five cents on the dollar. They held as security for their endorsement 78 shares of Maine Spinning Company stock, admittedly good, which security was exchanged by them for Marston Worsted Mill stock, at the request of the defendant. This tends to show that the latter stock was regarded by them as having value. This is further shown by their voluntarily endorsing the notes in the First National Bank without security, or promise of indemnity. In this situation, when the first notes became due, they might have paid them. If they had paid them, they would have become creditors of the corporation for the full amount, and at the same time have fixed the liability of the Gledhill estate for the same amount. And the Gled-

hill estate on payment would have had its remedy against the corporation in its then condition. Instead of doing so, they elected to give new notes, and to take charge of and operate the mill, with the results already described. We do not impute the results to mismanagement. They may have been due to changed conditions. The case does not diclose the cause. But the property, all that the Gledhill estate could look to for reimbursement, is gone. We think it is not a sufficient answer to say that the Gledhill estate could have paid voluntarily, and saved the situation so far as the plaintiffs were concerned. The plaintiffs were, or might have been, the movers. It does not appear that they made any claim, even by filing it in the probate office, until after they had operated the mill about eighteen months, and within about four months of the receivership proceedings. And certainly an estate. is not blamable for not paying before demand is made.

Under all the circumstances we think it would be unjust and inequitable now to extend the statute limitation, and award judgment against the estate.

Besides, and as more especially bearing upon the question of "culpable neglect," the evidence leads us to believe that the plaintiffs had no real intention of pursuing the estate, until the final failure of the Worsted Company. They allowed nearly six years to elapse after the appointment of the administratrix before commencing any action. Whether they had too little confidence in the ability of the estate to pay, or too much confidence in the ability of the company, is immaterial. They appear to have relied upon their own ability and the ability of their fellow creditors to work out their own indemnity. They were not trapped, misled or defrauded. Nothing but their own choice prevented them from commencing suit within the period of limitation. What is "culpable neglect" has been discussed by this court, and defined, so far as it is capable of exact definition, in the recent cases of *Bennett* v. *Bennett,* 93 Maine, 241, *Holway* v. *Ames,* 100 Maine, 208, and *Beale* v. *Swasey,* 106 Maine, 35. It is unnecessary to repeat the discussion. The facts before us bring this case, we think, well within the rules laid down in those cases. The plaintiffs have slumbered upon their rights, and that is "culpable neglect."

The certificate in this case, therefore, must be,

*Bill dismissed with costs.*