STATE OF MAINE                                SUPERIOR COURT
YORK, ss.                                     Civil Action
                                              DOCKET NO. CV-16- *2 85*

INHABITANTS OF THE COUNTY          )
OF YORK,                           )
                                   )
and                                )          **ORDER ON DEFENDANT'S**
                                   )          **MOTION FOR SUMMARY**
YORK COUNTY REGISTRY OF            )          **JUDGMENT**
DEEDS,                             )
                                   )
            Plaintiffs,            )
                                   )
      v.                           )
                                   )
PROPERTYINFO CORPORATION,          )
INC.,                              )
                                   )
            Defendant.             )

## I.    BACKGROUND

This case arises out of a contract entered into between plaintiff York County Registry of

Deeds ("York County" or "Registry") and defendant PropertyInfo Corporation, Inc.

("PropertyInfo") for the digitization of public records. Defendants contend that plaintiffs'

Complaint is barred by the Statute of Limitations because they first performed under the contract

in December of 2006 by providing a copy of the electronic record to the plaintiffs. Plaintiffs,

however, argue that because PropertyInfo continued to work on the contract after providing this

initial performance, the contract was never completed and the breach did not occur until plaintiffs

elected to treat the failure to provide a complete digital record as a breach by filing the instant suit.

The pertinent factual background is as follows. The parties initially started to work together

in 2003, when plaintiffs contracted with PropertyInfo's predecessor by merger, Landata

1

Technologies, Inc.[1] ("Landata"), to digitize and publish electronic copies of documents held by the Registry (the "Master Agreement"). (Supp.'g S.M.F. ¶¶ 1, 4-5, 12, 23.) To this end, plaintiffs leased hardware from PropertyInfo and purchased the right use software designed to store, facilitate, and host searchable electronic databases of the digitized documents. (Supp.'g S.M.F. ¶¶ 6, 12-16.)

Relevant to the instant dispute, PropertyInfo entered into a contract with plaintiffs on May 2, 2005 to create databases of indexed digitized images known as TIFFs (Tagged Image File Format) for the years 1940 through 1965 (the "Indexing Contract"). (Supp.'g S.M.F. ¶¶ 125-16, 18.) The parties entered a similar contract for the years 1966 through 1981 which is not at issue. (Supp.'g. S.M.F. ¶ 24.) Pursuant to the Indexing Contract, PropertyInfo was to: (1) "Create and enter an index for the images created from" the Registry's documents from the relevant time period; and (2) "import" the indexes into two searchable electronic databases, a "PAM" database for internal Registry use and a "WAM" database for public use on the internet. (Supp.'g S.M.F. ¶¶ 18-19, 21-22.) The PAM database was designed in part as a means for plaintiffs to review the database prior to publishing the WAM database online. (Supp.'g S.M.F. ¶¶ 21-22.) Specifically, the Indexing contract stated that PropertyInfo was to "[c]reate and enter an index for the images created from microfilm. Indexed data and images will be imported into the Register's on site database and the Registers' Internet database," which indexed the following fields: Book/Page, Grantor/Grantee, Town, Instrument Type, Related Documents, Instrument Date, and Recorded Time and Date. (Supp.'g S.M.F. ¶ 19.) Under the Indexing Contract, the parties also agreed to the terms of the "Master Agreement" governing the parties' relations. (Supp.'g S.M.F. ¶¶ 10, 20.) Because the Indexing Contract was only a supplement to the Master Agreement, it does not contain

---

[1] The court will refer to defendant as PropertyInfo for the purposes of this Order even if it was Landata at the time of the relevant conduct.

extensive contractual terms and instead only provides that defendant was to "[c]reate and enter" the indexes as explained above.

The Master Agreement included a provision prohibiting the parties from bringing any action "more than two years after the cause of action has risen." (Supp.'g S.M.F. ¶¶ 10, 20.) Although the contract did not articulate any deadlines, York County Register of Deeds Debra Anderson testified that the parties estimated that it would take PropertyInfo one to three years to complete the databases. (Supp.'g S.M.F. ¶¶ 25-26.)

In December of 2006, PropertyInfo delivered both the WAM and PAM databases to Plaintiffs with the indexes for the years 1940-1965. (Supp.'g S.M.F. ¶¶ 27-28.) Before publicly releasing the WAM database, the Registry conducted an internal review using the PAM database. (Supp.'g S.M.F. ¶¶ 21-22.) Later in the month, the Registry posted the WAM database online for the public to use. (Supp.'g S.M.F. ¶ 28.) In the same month, plaintiffs paid PropertyInfo $404,878.75 for its work under the Indexing Contract. (Supp.'g S.M.F. ¶¶ 29-31.)

From the time when PropertyInfo provided the databases to the plaintiffs in December until February of 2007, the parties communicated about problems with the digitized records. (Supp.'g S.M.F. ¶ 32.) On March 9, 2007, plaintiffs asked defendant to place a warning on both the PAM and WAM databases. (Supp.'g S.M.F. ¶ 33.) The requested warning for the WAM database read:

> On January 16, 2007 we added more indexes and images to our computer system. On March 9, 2007, it was determined that there may have been indexing errors for the year span of January 1, 1940 thru December 31, 1965. If you based your research on data from those years from the computers only, you are advised to confirm those findings by researching in our hard bound indexes located in the Registry of Deeds Office . . . .

(Supp.'g S.M.F. ¶¶ 34-35; Opp. S.M.F. ¶¶ 34-35.) The warnings were added to the databases on March 9, 2007. (Supp.'g S.M.F. ¶ 36.)

3

On November 9, 2007, plaintiffs authorized defendant to publish additional data that plaintiffs had not reviewed on the WAM database. (Supp.'g S.M.F. ¶¶ 38-40.) At some point after it was posted, the WAM database was taken off of plaintiffs' website due to the errors. (Supp.'g S.M.F. ¶¶ 41, 44.)

PropertyInfo, however, did not stop working on the Indexing Contract. From the time the databases were given to plaintiffs through the filing of this suit, defendant attempted to remedy the issues raised by the plaintiffs. (Supp.'g S.M.F. ¶ 44; *see also* Pl.'s Add'l S.M.F ¶¶ 8-33.) Upon being made aware of the errors in the original database, Bruce Curtis, a defendant of Landata, created a spreadsheet identifying the "mis-keying" of document types in the databases. (Pl.'s Add'l. S.M.F. ¶ 7.) Ultimately, PropertyInfo provided revised databases in the summers of 2011 and 2016. (Supp.'g S.M.F. ¶¶ 42-43.) These databases still had errors and no error-free index was ever provided. (Supp.'g S.M.F. ¶¶ 42-43; Pl.'s Add'l S.M.F. ¶ 60.) Plaintiffs also call into question defendant's quality assurance process and note that defendant cannot confirm that its usual quality assurance process was followed prior to 2011. (Pl.'s Add'l S.M.F. ¶¶ 34-38.)

Plaintiffs asserted that they did not bring suit until 2016 because defendant "repeatedly promised to correct the numerous problems with the index and York County had a long-standing relationship and contract with [PropertyInfo]." (Supp.'g S.M.F. ¶ 50.) Additionally, Mart Warren, a PropertyInfo Sales Representative for the York County Project, referred to the indexing project as "forever ongoing." (Pl.'s Add'l S.M.F. ¶¶ 12, 23.) Plaintiffs also argue that PropertyInfo was obligated to install the project data directly on York County's main database to be made available to the public but had not done so. (Pl.'s Add'l S.M.F. ¶¶ 19-20.)

4

Plaintiffs filed the instant Complaint on December 19, 2016, alleging Breach of Contract (Count I) and Unjust Enrichment (Count II). On October 3, 2017, defendant moved for summary judgment, arguing that the Complaint is barred by the applicable statute of limitations.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* In order to survive defendants' motion for summary judgment, plaintiff must set forth a prima facie case of each element of her cause of action. *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346 (citation omitted).

When a defendant asserts the statute of limitations defense in a motion for summary judgment, the defendant bears the burden of demonstrating that the plaintiff's action is time-barred. *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 15, 147 A.3d 824 (citation omitted). On the other hand, a plaintiff "bears the burden of demonstrating that the summary judgment record generates a factual dispute about the running of the limitations period." *Id.* (citations omitted).

5

## III. DISCUSSION

### a. Statute of Limitations

"Statutes of limitation are statutes of repose and . . . should be construed strictly in favor of the bar which it was intended to create and not liberally in favor of a promise, acknowledgment or waiver." *Nuccio v. Nuccio*, 673 A.2d 1331, 1334 (Me. 1996) (quoting *Duddy v. McDonald*, 148 Me. 535, 538, 97 A.2d 445, 446 (1953)) (quotation marks omitted). The primary purposes of such statutes are "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims," *Langevin v. City of Biddeford*, 481 A.2d 495, 498 (Me. 1984), and to prevent "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Brochu v. McLeod*, 2016 ME 146, ¶ 17, 148 A.3d 1220 (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)) (quotation marks omitted).

Maine's general statute of limitations is 14 M.R.S.A. § 752, which provides, "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . . ." Although defendant contends that the parties' contractual two-year time-period for the filing of actions and the Maine UCC's four-year statute of limitation may apply to the instant dispute, the decision of the court is not dependent on which period applies, only the time at which the action "accrued" for the purposes of the statute.

### b. When Cause of Action Accrued

#### i. Breach of Contract

Central to the instant motion, the parties dispute the date that the causes of action accrued. Specifically, defendant claims that the date of accrual was in December of 2006 when PropertyInfo first performed under the contract by providing plaintiffs with the WAM and PAM databases, and

6

at the latest March 9, 2007 when plaintiffs placed warnings on the databases due to complaints. (Def.'s Mot. Summ. J. 8-9.) Plaintiffs, however, say that the contract was never complete and that there is a question of material fact concerning when the defendant materially breached the parties' contract. (Pl.'s Opp. 18.)

A cause of action accrues for the purposes of the statute of limitations "when a party suffers a judicially cognizable injury." *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 11, 750 A.2d 591 (citation omitted). Generally, breach of contract claims are subject to the standard six-year statute of limitations and "a contract cause of action accrues at the time of breach." *Id.* (citation omitted); *see also Roy v. Carle G. Danis & Arundel Auto Serv.*, No. CV-86-101, 1988 Me. Super. LEXIS 21, *7 (York County, *Brennan, J.*) (Jan. 26, 1988) ("A breach of contract accrues as soon as the contract is broken." (citing *Blunt v. McCoombs*, 110 Me. 211, 85 A. 748 (1913)).

Defendant argues that even though it continued to attempt to remedy the errors in the databases through the time of filing, the breach of contract accrued when it first performed under the contract. To this end, defendant cites other cases from the Superior Court where attempts to remedy errors after a breach did not alter the time at which the cause of action accrued.

For example, the Superior Court (Sagadahoc County, *Bradford, J.*) in *Hathorn v. Twin Town Homes, Inc.*, No. CV-95-065, 1996 Me. Super LEXIS 305 (Sept. 12, 1996) found a breach of contract claim for the construction of a home untimely even though defendant attempted to remedy the alleged errors within the statute of limitations. *Id.* at *1-3. Specifically, the Court held:

> To the extent that the complaint alleges a breach of contract, it is barred by the six year statute of limitations. 14 M.R.S.A. § 752 (1980). A claim for breach of contract accrues at the time of the breach. *Burke v. Hamilton Beach Div., Scovill Mfg. Co.*, 424 A.2d 145, 149 (Me. 1981). Any breach of the contract had to occur when the home was delivered and assembled allegedly incorrectly, or at least when

the Hathorns discovered the faulty assembly in the winter of 1986-87, eight to nine years before the complaint was filed.

*Id.* at *2-3.

Plaintiffs argue that this case is distinguishable because it involves a single tangible good: a house. (Pl.'s Opp. 17.) However, the court finds that the construction of a house, which involves both the service of constructing the house and the final tangible product itself, is sufficiently similar to the Indexing Contract. Specifically, defendant agreed to digitize the Registry's files and provide York County with searchable databases containing the digital files. This agreement is substantially similar to the construction of a house, or any other contract which involves a mix of goods and services because they involve a service that is to be manifested in a final product. Although the defendant clearly agreed to digitize the files, this service was to be expressed in the form of the WAM and PAM databases. When those databases were provided to the plaintiffs, the defendant provided what it thought was the final expression of the contract. Although defendant worked with plaintiffs to correct the errors, a breach occurred at the time the defendant provided the plaintiffs with the defective databases. Although, as in *Hathorn*, the final product was defective, the cause of action accrued when the final product, the databases, were provided to the plaintiffs, or at the latest when the plaintiffs discovered the problems with the databases.

Plaintiffs cite to several decisions from other states to support their theory that the cause of action did not accrue until they elected to treat defendant's conduct as a breach in 2016. First, plaintiffs cite to *Romano v. Rockwell Internat., Inc.*, 926 P.2d 1114 (Cal. 1996) for the proposition that, "[W]hen there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." *Id.* at 1120 (citation omitted). Additionally, plaintiffs cite to a parenthetical in *AC, Inc. v. Baker*, 622 So. 2d 331 (Ala. 1993), which explained

8

the holding in a Missouri Appellate opinion as, "if the services contracted for are properly characterized as single, entire, and continuous in nature, a contract cause of action accrues on the last date upon which services were performed." *Id.* at 334 (citing *Estate of Cass*, 753 S.W.2d 632 (Mo. App. 1988)).

These cases are unpersuasive. First, the evidence presented does not indicate that the services defendant contracted to perform were meant to be continuous; they were to end when they provided the plaintiffs with the databases. Additionally, the court notes that the rule of law expressed in *Romano* as a minority opinion which has not been adopted in Maine.

Plaintiffs also claim that there is a question of material fact concerning whether the breach of the contract is material. (Pl.'s Opp. 18.) Specifically, plaintiffs argue that they treated defendant's conduct as only a partial breach of the contract that did not "accrue" the current cause of action. For example, in *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, 697 A.2d 417, the Law Court explained:

> When one party breaches a contract, the nonbreaching party may, depending on the circumstances, either treat the breach as partial or total. "A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end . . . If [the] breach is not sufficiently material and important for this, the breach is called a partial breach." Arthur Linton Corbin, 4 *Corbin on Contracts* § 946 at 809-10 (1951). If a party elects to treat the breach as partial, however, it must still perform its obligations in order for it to avoid also breaching the contract. *Id.* at 811. ("A partial breach by one party, [however,] does not justify the other party's subsequent failure to perform. . . .").

*Id.* ¶ 10. Plaintiffs contend that the provision of the substandard databases in December 2006 was only a partial breach because PropertyInfo still was obligated to complete quality assurance review of the data. (Pl.'s Opp. 17.)

Whether a breach has actually occurred is a question of fact. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041. In this case, however, there is no

9

question of material fact that the breach occurred in 2006. Defendant purported to perform under this contract when it provided plaintiffs with the databases in December of 2006. At this point, plaintiffs' cause of action accrued because they would have been entitled to bring suit against PropertyInfo for providing an insufficient performance. Although the parties worked together to try to remedy the problems with the original tender of performance, this does not constitute a new breach. *Island Terrace Owners Ass'n v. Unit 91*, No. RE-10-257, 2012 Me. Super. LEXIS 54, *8 (York County, *O'Neil, J.*) (March 22, 2012) ("New remedies would accrue for a subsequent breach of a different provision of the contract but a failure to remedy a breach is not in and of itself a new breach.").

Because the breach of contract accrued, at the latest, when plaintiffs were made aware of the issues with the original databases in early 2007, the claim is untimely and is thus barred by the statute of limitations, no matter which is applied.

### ii. Unjust Enrichment

An unjust enrichment claim is brought to recover "the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay."[2] *Estate of Miller*, 2008 ME 176, ¶ 29, 960 A.2d 1140 (citation omitted) (quotation marks omitted). To establish unjust enrichment, plaintiffs must show that: (1) they conferred a benefit on defendant; (2) defendant had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under circumstances that make it inequitable for defendant to retain the benefit without payment of its value. *Id.* (citation omitted).

---

[2] Although not argued by the defendant, the court notes that an unjust enrichment claim may also be unsustainable in this case because the parties did indeed have a contractual relationship.

10

As with any other claim, "the statute of limitations issue turns on when a judicially cognizable injury was sustained." *Id.* ¶ 30. Plaintiffs argue that the injury was sustained not when the benefit was conferred on defendant in December of 2007, but when defendant retained that benefit after failing to fully perform the contract. However, as discussed above, the court finds that the defendant at the latest when plaintiffs discovered the problems with the databases in early 2007. Any unjust enrichment claim would accrue at the time when defendant allegedly improperly retained the payment after the breach. Because this occurred outside of the six-year statute of limitations, the claim is likewise barred.

### a. Estoppel

Although this result may seem harsh given the parties acted pursuant to the contract until very recently, the court notes that doctrines such as estoppel sometimes act to bar a defendant from asserting the statute of limitations when it is inequitable to enforce. *Dasha by Dasha v. Me. Med. Ctr.*, 665 A.2d 993, 995 (Me. 1995). However, estoppel is narrowly applied in such circumstances. The Law Court has explained:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim. The plaintiff thus relies to his detriment on the conduct of the defendant by failing to seek legal redress while the doors to the courthouse remain open to him. *Only upon a demonstration that the plaintiff had in fact intended to seek legal redress on his claim during the prescriptive period can his failure to file suit be specifically attributed to the defendant's conduct.*

*Id.* (quoting *Townsend v. Appel*, 446 A.2d 1132, 1134 (Me. 1982)) (emphasis added).

In addressing an estoppel claim in *Hathorn*, the Court found that a "bare attempt to repair . . . does not amount to conduct that can actually induce a plaintiff not to take timely legal action on a claim . . . ." *Hathorn*, 1996 Me. Super. LEXIS 305 at *5.

11

In its motion to dismiss, defendant argues that estoppel does not bar it from raising the statute of limitations defense. This argument is unopposed in plaintiffs' opposition and they have thus waived any argument that estoppel applies. *See Holland v. Sebunya*, 2000 ME 160 n.6, 759 A.2d 205.

Additionally, the defendant notes that when asked why the Registry waited until 2016 to bring suit, Debra Anderson testified, "Well, we let them try three times. You know, I thought that they would finally get it finished. And they never did. And now the last set only has indexed deeds and mortgages. There's thousands of different documents, you know, and we're done now. We're done. I'm not going to put up with this anymore." (Supp.'g S.M.F. ¶ 49.) Further, plaintiffs responded to a similar interrogatory that they waited to bring suit because PropertyInfo "repeatedly promised to correct the numerous problems with the index and York County had a long-standing relationship and contract with [PropertyInfo]." (Supp.'g S.M.F. ¶ 49.) Thus, there is no indication that any representation made by defendant induced PropertyInfo to delay bringing suit and estoppel does not apply to bar the statute of limitations defense.

## IV. CONCLUSION

For the reasons set forth above, the statute of limitations bars plaintiffs' causes of action and defendant's motion for summary judgment is hereby granted.

The clerk shall make the following entry on the docket:

Defendant's motion for summary judgment is hereby GRANTED.

SO ORDERED.

DATE: May 18, 2018

_____
John O'Neil, Jr.
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 5/18/18

13